(118 App. Div. 499)

INTERNATIONAL CHEESE CO. v. PHENIX CHEESE CO.

(Supreme Court, Appellate Division, Third Department. March 13, 1907.)

1. TRADE-NAMES—TITLE—EXTENT OF RIGHT ACQUIRED.

Where defendant was the first to use a certain trade-name for its cream cheese, continued to use the name for many years, by its efforts created a demand for this brand of cheese, and had always successfully resisted any attempts by others to use the name, it acquired a right to its use to the exclusion of others.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 24.]

2. SAME.

The fact that a manufacturer of cheese has a trade-mark used on all its products does not destroy its right to the exclusive use of a certain trade-name as applied to its cream cheese.

Appeal from Special Term.

Action by the International Cheese Company against the Phenix Cheese Company. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, and COCHRANE, JJ.

Richard L. Sweezy, for appellant.
Arnold & Cook (Lynn J. Arnold, of counsel), for respondent.

JOHN M. KELLOGG, J. "Cream cheese, as it is now known, was first prepared and offered for sale by one Lawrence, at Chester, N. Y., in the year 1872. It was put upon the market as cream cheese. Others began to manufacture the cheese, and Mr. Lawrence adopted the trade-name of "Star Brand" for his product, and other manufacturers made and marketed cream cheese under the trade-name "World Brand," "Globe Brand," "Eagle Brand," "Clover Brand," "White Rose Brand," and other brands. In 1880 one Reynolds, who was in the cheese business in New York, made a contract with Lawrence and another in his locality to furnish him cream cheese with the label and marks upon it "Philadelphia Cream Cheese," and they were not to sell any of their product under that name elsewhere. This cheese was not different in its composition from other cream cheese upon the market. Through different transfers and business arrangements, the defendant has succeeded to the business of said Reynolds, and the

defendant and its predecessors ever since 1880 have been procuring and selling, or manufacturing and selling, cream cheese under the name of "Philadelphia Cream Cheese," and have extensively advertised it, quoted, and caused it to be quoted to trade journals, and have established an extensive reputation and sale for it. The plaintiff was incorporated in 1903, and began business at Cooperstown, N. Y., and began the manufacture and sale of cream cheese, calling its product "Mohican Brand," and it continued to sell its product under that name until April, 1905, when certain customers began to call for "Philadelphia Cream Cheese," and it discovered that there was an established market for cream cheese of that name, and it then began to manufacture and sell a part of its product as "Philadelphia Cream Cheese," selling its Mohican Brand where it, or cream cheese, simply was ordered, but if Philadelphia Cream Cheese was ordered supplying its so-called Philadelphia Cream Cheese. Prior to the commencement of the action, two or three other manufacturers had attempted to use the word "Philadelphia" in connection with their cream cheese, but the defendant protested against such action, threatened litigation, and the use of the word "Philadelphia" was abandoned by such dealers, and no manufacturer or dealers except the plaintiff and the defendant now use the words "Philadelphia Cream Cheese," or have used it in designating their product except as before stated. Immediately upon plaintiff's beginning to use that word, the defendant remonstrated and threatened legal proceedings to enjoin such use, and this action was promptly brought.

It appears from the evidence that at various hotels and restaurants in New York, Philadelphia, and other places, upon the bills of fare under the head of cheese, Philadelphia Cream cheese is the only cream cheese mentioned, and where guests order it with the wrapper upon it, it proves that the cheese is not that brand, but is of the "Star" brand, "World" brand, or some other brand, and the plaintiff claims that such use of the word "Philadelphia" and the fact that in trade journals the Philadelphia cream cheese is quoted, makes the name "Philadelphia" a general name applicable to cream cheese, and not a trade-name belonging to the defendant. The findings show that the defendant knew that the words "Philadelphia Cream Cheese" were used upon the various bills of fare of hotels and restaurants, but it does not appear that the defendant knew that the cheese supplied upon an order from such bills of fare was not its Philadelphia Cream Cheese. It is probably true that there is much more cream cheese sold at retail, and by the different hotels and restaurants, and to private consumers under the name "Philadelphia Cream Cheese" than is actually manufactured by the defendant; but the fact that others have attempted to appropriate the defendant's trade-name because it is valuable does not deprive the defendant of the value which it has given it. It has not consented that its trade-name shall be used indiscriminately by jobbers, manufacturers, and dealers. The evidence shows that wherever it has known of a violation of its trade-name or rights, it has interfered and prevented it, and the fact that hotels and restaurants were selling other brands of cheese as Philadelphia Cream Cheese does not

show an intent by defendant to abandon its trade-name, or to make it public property.

The defendant makes and sells many other kinds of fancy cheese, and has registered a trade-mark "X–L–C–R," surrounded by a diamond shaped outline with the name "Excelsior" over it, and has that trade-mark upon its cream cheese, and upon all its various varieties of cheese. But the fact that it has a trade-mark used upon, and applicable to, all of its various products, does not destroy its rights to its trade-name "Philadelphia," as applied to its cream cheese.

The judgment appealed from should be reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event. All concur.