## PROCTOR & GAMBLE CO. v. ENEY SHORTENING CO.

(Court of Appeals of District of Columbia. Submitted May 14, 1920. Decided June 2, 1920.)

No. 1319.

1. **Trade-marks and trade-names ⊕⟀21—Use of sign "Esco" likely to produce confusion with goods sold under the sign "Crisco."**

   The use of the sign "Esco," as a trade-mark for a lard substitute, would be likely to produce confusion with lard substitute sold under the sign "Crisco," and registration was properly refused.

2. **Trade-marks and trade-names ⊕⟀43—Origin of mark immaterial.**

   The trade-mark statute takes no account of the origin of a mark; the only question being, Would its use be likely to result in confusion? in which case it is unregisterable.

Appeal from Decision of Patent Office.

Opposition of the Proctor & Gamble Company to the application of the Eney Shortening Company for the registration of a trade-mark. From a decision in favor of the latter, the former appeals. Reversed.

Paul Finckel, of Washington, D. C., and A. M. Allen, of Cincinnati, Ohio, for appellant.

E. T. Fenwick and Chas. R. Allen, both of Washington, D. C., for appellee.

SMYTH, Chief Justice. From a decison of the Patent Office, overruling the opposition of the Proctor & Gamble Company to the application of Eney Shortening Company for the registration of the sign "Esco" as a trade-mark for a lard substitute, the former appeals.

The opposer shows that it is the owner of the sign "Crisco" as a trade-mark for a lard substitute, and alleges that, as its goods are of the same descriptive qualities as the goods of the applicant, the marks being similar, confusion would be likely to result in the minds of the public with respect to the origin of the goods upon which the marks appeared, and that, in consequence, the opposer would be damaged thereby. 33 Stat. 725, c. 592, §§ 5 and 6 (Comp. St. §§ 9490, 9491). The Examiner of Interferences sustained the opposer, but he was reversed by the First Assistant Commissioner, who held that no likelihood of confusion had been shown.

[1] It is conceded that the goods are substantially identical. The only question, then, is as to whether or not the two marks are so similar as to be likely to produce confusion in the minds of purchasers with respect to the origin of the goods upon which they are used. As no testimony was taken, we must determine it by an inspection of the marks themselves. What constitutes objectionable similarity in marks has been so often considered by this court (Wayne County Preserving

---

⊕⟀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Co. v. Burt Olney Canning Co., 32 App. D. C. 279; Phœnix Paint & Varnish Co. v. John T. Lewis & Bros. Co., 32 App. D. C. 285; Kaut-Reith Shoe Co. v. International Shoe Co., 45 App. D. C. 545; Thomas Manufacturing Co. v. Aeolian Co., 47 App. D. C. 376; William Waltke & Co. v. George H. Schafer & Co. [D. C.] 263 Fed. 650) that we do not deem it necessary to enter upon a discussion of it here. For the reasons given in those decisions we hold that the use of the marks before us upon the goods to which they are applied in this case would be likely to produce confusion. Even if we doubted it, we would still rule in favor of the opposition on the authority of William Waltke & Co. v. George H. Schafer & Co., supra, and Lambert Pharmacal Co. v. Mentho-Listine Chem. Co., 47 App. D. C. 197.

[2] The applicant says that its mark is made up "of the initials of the corporation with the termination 'Co.'; Eney Shortening Co., 'Esco' "—and seems to think that there is something in that which should entitle it to have the mark registered, but we perceive no force in the suggestion. The trade-mark statute takes no account of the origin of a mark. The question is: Would its use be likely to result in confusion? If so, it is unregisterable. As was said by the Examiner of Interferences, the "consuming public know little and care less about the origin of any mark, and very seldom, if ever, take it into consideration." The statute does not contemplate that the public should do so. It follows that the decision of the Patent Office must be reversed, and the opposition sustained.

Reversed.