[Civ. No. 14539. First Dist., Div. Two. Jan. 26, 1951.]

THE AMERICAN DISTILLING COMPANY (a Corporation), Appellant, v. BELLOWS AND COMPANY, INC., (a Corporation), Respondent.

Norman A. Eisner for Appellant.

Boyken, Mohler & Beckley, A. W. Boyken, W. Bruce Beckley and Gerald J. Craugh for Respondent.

SCHOTTKY, J. pro tem.—This is an appeal from a judgment in favor of defendent and cross-complainant and against plaintiff and cross-defendant denying appellant's complaint for declaratory relief and granting respondent an injunction against appellant.

Plaintiff and appellant, The American Distilling Company, and defendant and cross-complainant Bellows and Company, Inc., were both Maryland corporations doing business in California. The American Distilling Company filed a complaint for declaratory relief against Bellows and Company, Inc., seeking an adjudication to the effect that a trade-mark chosen by said company for a new blend of whiskey did not constitute an infringement of respondent's trade-mark or unfair competition against said respondent.

The complaint attached as exhibits photostats of labels used by appellant on its new brand of whiskey and that used by respondent on one of its brands. Bottles of the products bearing these labels were also introduced in evidence by plaintiff, while respondent introduced as exhibits bottles of seven different additional brands produced by it, all of which bore the trade-mark ''Bellows.''

The complaint alleged that defendant claimed and asserted ownership of a trade-mark consisting of the word ''Bellows,'' and that after plaintiff began distribution of its new brand ''Fellows,'' defendant claimed and asserted that plaintiff's brand and label was an infringement of defendant's brand and label and of its alleged trade-mark and threatened plaintiff with action by reason of the alleged infringement of trademark and unfair competition.

Defendant and respondent answered and filed a cross-complaint setting forth that the trade-mark ''Bellows'' is registered in the United States Patent Office as Registration No. 365,723, issued March 14, 1939, for use on whiskey, and that defendant and cross-complainant is the owner of said trademark and said registration; that the sale, distribution and advertising of whiskey and other alcoholic beverages bearing the trade-mark ''Bellows'' and the corporate name of Bellows and Company, Inc. have been very extensive throughout the United States and in California amounting to the sum of

$108,000,000 from January 1, 1942, to September 30, 1948, and that during that period more than $1,980,000 was spent on advertising liquor bearing said trade-mark; that due to the long and extensive use of said trade-mark and corporate name, whiskey and other alcoholic beverages have come to be widely and favorably known as defendant and cross-complainant's products and are identified by the public by said trade-mark and corporate name to defendant and cross-complainant's great benefit and profit. It alleged also that the word "Bellows" had acquired a secondary meaning in that to the trade and purchasing public whiskey and alcoholic beverages bearing the trade-mark "Bellows" had come to mean and still mean defendant and cross-complainant's products only. It further alleged that each and both of the designations "Fellows" and "A. J. Fellows" are colorable imitations of defendant and cross-complainant's trade-mark Bellows and the corporate name "Bellows & Company, Inc." with intent to deceive the trade and the public into purchasing plaintiff's whiskey bearing such designations in the belief that said whiskey is the product of defendant and cross-complainant; that the use by plaintiff of such designations infringes defendant and cross-complainant's trade-mark "Bellows" and corporate name "Bellows & Company, Inc." and constitutes unfair competition with defendant and cross-complainant. It was alleged that defendant and cross-complainant had notified plaintiff and cross-defendant that its use of the aforesaid designations infringed defendant's trade-mark and constituted unfair competition and demanded discontinuance of its use, whereupon plaintiff and cross-defendant notified cross-complainant that it had discontinued use of said designations, but threatened to resume their use if it is not judicially determined that it is violating defendant and cross-complainant's rights in using said designation. Cross-complainant asked that plaintiff's use of the designations "Fellows" and "A. J. Fellows" be adjudged infringement of cross-complainant's trade-mark "Bellows" and the name "Bellows & Company, Inc." and unfair competition; that plaintiff and cross-defendant be perpetually enjoined from using the aforesaid designations; that plaintiff account to defendant for all profits from the sale of whiskey bearing such designations.

The testimony at the trial showed that the name Bellows had been used in the business of respondent and its predecessors since 1847 and is well known in connection with alcoholic beverages throughout the United States. It was found by the

trial judge (and these findings are not questioned by appellant) that from January 1, 1943, to December 31, 1948, Bellows and Company, Inc., and its predecessors sold more than $115,000,000 worth of whiskey and other alcoholic beverages, bearing the trade-mark "Bellows" and the corporate name of "Bellows & Company, Inc.," and that from January 1, 1944, to December 31, 1948, said company and its predecessors in title sold to customers located in California about $14,300,000 worth of whiskey and other alcoholic beverages bearing the Bellows trade-mark and corporate name; also that from January 1, 1942, to December 31, 1948, said company and its predecessors in title spent $2,262,000 upon advertising its products, said trade-mark "Bellows" and said corporate name, of which $172,000 was spent in California from January 1, 1945, to December 31, 1948.

The trial court found, and appellant does not dispute the finding, that the trade-mark "Bellows" was registered in the United States Patent Office under No. 365,723, issued March 14, 1939, for Scotch whiskey, of which trade-mark and registration Bellows and Company, Inc. is the owner; that the word "Bellows," the surname of the founder of the business now operated by defendant, as used in the trade is an abbreviation of the corporate name Bellows and Company, Inc.

The record shows that appellant herein developed a new blend of straight whiskies in July, 1948, which it wished to place on the market under a new brand name. Mr. Buck, Mr. Greenwood and Miss Bajuk, appellant's vice-president, assistant treasurer and sales manager, and assistant secretary, respectively, jointly chose the name "Fellows" because of its advertising potential. Miss Bajuk suggested the name Fellows, they stated, because it was the name of her sister, Mrs. Ann June Fellows. Mrs. Fellows was a widow, employed as a land bank clerk and had no connection with the liquor business. Both Mr. Buck and Mr. Greenwood had been familiar with respondent and its trade-mark for many years prior to the adoption by them of the name "Fellows." Since under the Business and Professions Code the name of a person cannot be registered as a trade-mark with the Secretary of State of California unless the name is written in some particular script or distinguishing manner (Bus. & Prof. Code, § 14242(d)) the facsimile signature "A. J. Fellows" was registered as a trademark for use in connection with straight whiskey. A label was designed and an advertising campaign developed. Shortly after appellant's new product reached the market appellant

was advised by respondent that the name "Fellows" infringed its trade-mark "Bellows."

Bellows and Company put out many different brands of whiskey and other alcoholic beverages, each bearing in prominent letters in a single line near the top of the label the one word "Bellows." All the Bellows labels on the bottles of their various brands of whiskey introduced into evidence as exhibits have a white background. The word "Bellows" on the "Partners Choice" brand is in black and white lined letters producing a grayish effect. These letters are about three-eighths of an inch in height. Some of the other brands have a shade of red as well in the lettering of this word. On the label of the aforesaid brand, the words "Partners Choice" appear in black, rather ornate letters, below the word Bellows, and are somewhat smaller in size. Just beneath "Partners Choice" are the words "Whiskey—a Blend" in letters about the same size as those in the line above them, but printed in a style similar to that of the word "Bellows." These letters are filled in with fine short black lines and dots. Below this appear three lines of black script. At the bottom of the label are the words "Distributed by" in script and "Bellows & Company, Inc." in rather ornate shaded letters about one-eighth of an inch in height. At the top of this particular label above the word "Bellows" is a device which appears to be a gold colored bee encircled by a black wreath of oak leaves, with "Est. 1830" printed within it.

Appellant's label, also on a white background, has near the top the word "Fellows" in large block letters approximately five-eighths of an inch in depth in red with a shading of gold. Below the word "Fellows" appears a circular emblem with a gold background containing white stars and a gold and white eagle. On one side of the emblem appears "est.," on the other, "1892." Beneath this on two lines are the words

"A Blend of
Straight Whiskey"

in letters very similar in size and style to the words "Whiskey—A Blend" on respondent's label. Beneath this appear three lines of script similar in style to the three lines on respondent's label, although somewhat smaller in size, and through these lines is written diagonally in green the facsimile of the signature "A. J. Fellows." The capital F of this signature, although it is clear on close inspection that it is an F, could at a short distance be easily mistaken for a B, D, or P.

At the bottom of the label in solid black letters one-sixteenth of an inch in height appear the words "Blended and Bottled By" and on the next line in black letters approximately one-eighth of an inch in height "The American Distilling Company." The general appearance of bottles in size and style is similar but appellant's bottle has on the sides and near the bottom below the label a pattern of indentations in squares which is quite apparent at close range. On the neck of the appellant's bottle which is sealed in black appears diagonally in yellow script "American Distilling Company," and on the neck of respondent's bottle sealed in white appears horizontally "Bellows & Company" in plain black print and their wreath-like emblem in black. On some of respondent's brands this printing and emblem is in red.

After notification by respondent that it deemed appellant's use of the word "Fellows" an infringement, it discontinued its use and substituted the trade-mark "Frontier" for "Fellows." Less than 1,000 cases had been sold under the name of "Fellows."

The trial court found that there was no evidence of actual confusion or deception of the purchasing public in respect to the use of the trade-mark "Fellows" and "A. J. Fellows" because the amount of whiskey that was sold bearing said trade-marks was so small and sold over such a short period of time that the opportunity therefor was lacking. It found further that: "Each and both of the trade-marks 'Fellows' and 'A. J. Fellows' are colorable imitations and infringements of the trade-mark 'Bellows' and the corporate name 'Bellows & Company, Inc.'; and the use of such trade-marks . . . is likely to cause confusion or mistake and to deceive the public into purchasing goods bearing said trade-marks in the belief that such goods are the goods of Bellows & Company, Inc., to the injury and damage of Bellows & Company, Inc.," and that "the continued use of the trade-marks 'Fellows' and 'A. J. Fellows' by The American Distilling Company would result in unfair competition with Bellows & Company, Inc."

Appellant argues that the trial court has found appellant guilty of infringement of trade-mark on the sole basis of what the court considered similarity of words; that there was no evidence or finding of fraudulent intent or intent to appropriate the good will of respondent; that there was no finding of any similarity in appearance in dress of the merchandise or of any attempt to make one package resemble the other. Therefore, contends appellant, the case of respondent must

stand or fall on the basis of technical trade-mark infringement, which, appellant says, is supported by absolutely nothing other than the alleged similarity of the word "Fellows" to respondent's name Bellows.

Appellant contends that the court fell into error in finding trade-mark infringement because a technical trade-mark may not be obtained to a family surname, and argues that the fact that respondent obtained registration of the name "Bellows" in the United States Patent Office under the 10-year proviso of the Act of 1905 (15 U.S.C.A. § 85) does not mean that the name is a valid technical trade-mark, that such registration establishes only that the name has been in use so long that it is presumed to have acquired a secondary meaning, but does not extend to the registrant any rights beyond those known to the common law.

At the outset, it must be determined then, whether respondents have a valid trade-mark in the word "Bellows." If it is a valid trade-mark under federal law, it will undoubtedly be recognized as such by the California courts. (Bus. & Prof. Code, § 14270.) Appellant cites authorities to the effect that a personal name is not susceptible of exclusive appropriation and even registration in the patent office cannot make it a valid trade-mark (*Borden Ice Cream Co.* v. *Borden's C. Milk Co.*, 201 F. 510 [121 C.C.A. 200] and that a personal name is not the subject of a technical trade-mark (*Chickering* v. *Chickering & Sons*, 215 F. 490 [131 C.C.A. 538]). The Chickering case, *supra*, does however go on to say "It may, however, by appropriation and actual exclusive use, in course of time come to denote, in the minds of the public, the product of some particular person or factory or business, and thus acquire a secondary signification. Such a secondary signification, when established, is the subject matter of exclusive right. . . ." The United States Supreme Court passed on the 10-year proviso of the Act of 1905 under which respondent has registered in the case of *Thaddeus Davids Co.* v. *Davids*, 233 U.S. 461, 462 [34 S.Ct. 648, 58 L.Ed. 1046] in 1915. The above cases cited by appellant were decided prior to the Davids case. Because the Davids case was one involving registration of the surname "Davids" as a trade-mark and is the leading authority in regard to the effect in the federal courts of such registration we quote from it as follows:

"Having the right to register its mark, the complainant was entitled to its protection as a valid trade-mark under the statute. As defined in § 29, (33 Stat. 731) 'the term "trade-

mark'' includes any mark which is entitled to registration under the terms of this act.' The defendants, however, insisted below, and urge here, that although the ·mark was registrable it was not susceptible of ownership and hence that the complainant could not maintain a suit for injunction, profits and damages, as provided in the statute, for the reason that the remedies it affords are available only to 'owners' ( §§16, 19). That is to say, that registration was expressly permitted but that protection to the registrant was denied. This interpretation, of course, would render the ten-year proviso meaningless by stripping it of practical effect. It was not the intention of Congress thus to provide for a barren notice of an ineffectual claim, but to confer definite rights. The applicant, who by virtue of actual and exclusive use is entitled to register his mark under this clause, becomes on due registration the 'owner' of a 'trade-mark' within the meaning of the act, and he is entitled to be protected in its use as such.

"The further argument is made that, assuming that the complainant has a valid registered trade-mark, still the protection is limited to its use when standing alone (as the complainant has used it on its labels) and that there can be no infringement unless it is used in this precise manner. The statutory right cannot be so narrowly limited. Not only exact reproduction, but a 'colorable imitation' is within the statute; otherwise, the trade-mark would be of little avail as by shrewd simulation it could be appropriated with impunity. . . . .

"But, while this is true, the inquiry as to the extent of the right thus secured by the statute, in the case of marks which are admitted to registration under the ten-year clause, is not completely answered. It is apparent that, with respect to names or terms coming within this class, there may be proper uses by others than the registrant even in connection with trade in similar goods. It would seem to be clear, for example, that the registration for which the statute provides was not designed to confer a monopoly of the use of surnames, or of geographical names, as such. It is not to be supposed that Congress intended to prevent one from using *his own name* in trade, or from making appropriate reference to the town or city in which his place of business is located; and we do not find it necessary to consider the question of the validity of such an attempt if one were made. Congress has admitted to registration the names or terms belonging to the class under consideration simply because of their prior use as trade-marks, although they had not been such in law. Their exclusive use

as trade-marks for the stated period was deemed in the judgment of Congress a sufficient assurance that they had acquired a secondary meaning as the designation of the origin or ownership of the merchandise to which they were affixed. And it was manifestly in this limited character only that they received statutory recognition and, on registration, became entitled to protection under the act. (Emphasis ours.)

"In the case, therefore, of marks consisting of names or terms having a double significance, and being susceptible of legitimate uses with respect to their primary sense, the reproduction, copy or imitation which constitutes infringement must be such as is calculated to mislead the public with respect to the origin or ownership of the goods and thus to invade the right of the registrant to the use of the name or term as a designation of his merchandise. This we conceive to be the meaning of the statute. It follows that where the mark consists of a surname, a person having *the same name* and using it *in his own business,* although dealing in similar goods, would not be an infringer, provided that the name was not used in a manner tending to mislead and it was clearly made to appear that the goods were his own and not those of the registrant. This is not to say that, in this view, the case becomes one simply of unfair competition, as that category has been defined in the law; for, whatever analogy may exist with respect to the scope of protection in this class of cases, still the right to be protected against an unwarranted use of the registered mark has been made a statutory right, and the courts of the United States have been vested with jurisdiction of suits for infringement, regardless of diversity of citizenship. Moreover, in view of this statutory right, it could not be considered necessary that the complainant in order to establish infringement should show wrongful intent in fact on the part of the defendant, or facts justifying the inference of such an intent. (*Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.,* 138 U.S. 537, 549 [11 S.Ct. 396, 34 L.Ed. 997]; *Singer Mfg. Co.* v. *June Mfg. Co.,* 163 U.S. 169 [16 S.Ct. 1002, 41 L.Ed. 118]; *Elgin Nat'l. Watch Co.* v. *Illinois Watch Case Co.,* 179 U.S. 665, 674 [21 S.Ct. 270, 45 L.Ed 365].) Having duly registered under the act, the complainant would be entitled to protection against any infringing use; but, in determining the extent of the right which the statute secures and what may be said to constitute an infringing use, regard must be had, as has been said, to the nature of the mark and its secondary, as distinguished from its primary, significance." (Emphasis ours.)

■ We believe that registration of the name "Bellows" under the Act of 1905 gave it trade-mark status, and that it is protected against infringement under both federal and state laws. As a validly registered trade-mark which had acquired a secondary meaning prior to such registration, it is entitled to be dealt with within this state as a trade-mark, although not registered here, for the court found that such trade-mark had been used by respondent and its predecessors in title in California and throughout the United States for many years prior to the commencement of the instant action.

There is another point of difference between the facts in this case and those in the Borden, Chickering, and Davids cases that it is well to keep in mind. In those cases there was involved the right of a person to use *his own surname* in his business. In the instant case we have the borrowed surname of an individual who has no interest in appellant's business.

The courts will go to some lengths to protect the right of an individual in *his own* surname, as noted above in the Davids case. ■ As stated in 52 American Jurisprudence, page 547, section 64, "The rule is that while, as against persons bearing a different name, a person's right to the use of his own name as a trademark or tradename is absolute and exclusive, yet as against other persons bearing the same name no such exclusive right can be acquired." ■ And the same article at pages 608-609, section 133, states: "It follows that a charge of infringement or unfair competition cannot be predicated upon the bona fide and innocent use by an individual of his own name in his own business, even though such use may incidentally interfere with or injure the business of another person or organization of the same or *a similar name.*" (Emphasis added.) It must be kept in mind, therefore, that if appellant's own name were "Fellows" it would have a right in that name that the courts would protect to the greatest extent possible. ■ Appellant here, however, had an unlimited choice, and he would be under a duty to choose a name that may not be considered a colorable imitation of another trade-mark. (See 52 Am.Jur. p. 603, § 123.)

As stated by the learned trial judge at the close of the trial: "It sounds somewhat fabulous that they should have struck on a name that happened to be so close to that of Bellows, the same except for the initial letter."

■ It is clear that a surname which is a colorable imitation of another surname which has become a trade-mark will be considered an infringement if used in the trade-mark sense.

In *Warner Bros. Co.* v. *Wiener*, 218 F. 635 [134 C.C.A. 393], rehearing was granted following the decision in the Davids case, *supra,* and the Circuit Court of Appeals (Second Circuit) there stated: "A majority of the court understand it [the Davids case] to hold that the trade-mark granted in a surname under the fourth proviso of section 5 of the Trade-Marks Act of 1905 is in the name itself, irrespective of the way in which it is printed or displayed. The name in such a case is to be treated as if it were an arbitrary word, and is to be protected, not only against literal, but against colorable imitations. So regarded the word 'Wiener,' standing alone, is, in our opinion a colorable imitation of the word 'Warner,' and the defendant must be enjoined, although it is his own surname, from using it in the corset business alone, or in any manner amounting to a colorable imitation of the word 'Warner.' "

Appellant cites *Excelsior C. M. Co.* v. *Taylor Milling Co.,* 43 Cal.App. 591, 594 [186 P. 207] as authority that mere similarity in two names is not ground for declaring existence of infringement. In that case plaintiff's mark was "California Flapjack Flour" and defendant's marks were "Los Angeles Best Self-Rising Flapjack Flour" and "Taylor's Improved Flapjack Flour." It is not difficult to see why the court held the marks to be quite dissimilar. "Flapjack" was held to be an old and familiar word. Such a word could not be exclusively appropriated any more than the word "flour." That case does, however, cite *Dunston* v. *Los Angeles Van & Storage Co.,* 165 Cal. 89 [131 P. 115], as being authority for the proposition that it is well settled that where the plaintiff *has no exclusive right by way of trade-mark* in the use of a particular name or term in the description of his business or product, he may not rely upon the mere similarity of names or terms to establish unfair competition. In the present case we do have a right by way of trade-mark to the name "Bellows" which as against anyone except a person of the same name can be considered exclusive. The case of *Howe Scales Co.* v. *Wycoff, Seaman & Benedict,* 198 U.S. 118 [25 S.Ct. 609, 49 L.Ed. 972], cited by appellant was decided long prior to the Davids case, *supra.*

Appellant contends that only if "Fellows" were a firm name, could it be argued that by virtue of *"idem sonans"* confusion might arise. To quote appellant, "Only if 'Bellows' were imitated by a name that also purported to be the name of a producer of whiskey, could any possibility as to confusion

of origin arise. 'Fellows' does not purport to be the name of a producer or a firm name. It is not used in the same sense or in the same manner as the name 'Bellows.' It is an arbitrary word selected as a brand name of a product. It is a *simple common noun*, in the public domain which anyone has a right to use. It is used in its *primary sense*, and such usage may not be restricted on the ground that the use of the word in its primary signification is an infringement of the secondary meaning acquired by the contraction of the corporate name of respondent.'' (Emphasis ours.)

It is rather surprising that appellant claims that the word ''Fellows'' is a simple common noun for such claim cannot be reconciled with appellant's registration of the word as a proper noun—the name of A. J. Fellows. Furthermore, the public would not understand it as anything but the name of some person, since the signature of A. J. Fellows, is signed in green across the face of the label. Therefore, it is understandable that the trial judge could conclude as he did ''that the use of such trade-marks 'Fellows' and 'A. J. Fellows' is likely to cause confusion or mistake and deceive the public into purchasing goods bearing said trade-marks in the belief that such goods are the goods of Bellows & Company, Inc.'', having previously found that ''Fellows'' and ''A. J. Fellows'' are colorable imitations of the trade-mark ''Bellows'' and the corporate name ''Bellows & Company, Inc.'' The prominence of the word Fellows at the top of the label, and the signature, could easily convey the meaning to the average customer that Fellows was the producer. The trial judge evidently was convinced that the words at the bottom of the label ''Blended and Bottled by'' in letters one-sixteenth of an inch in height, and ''The American Distilling Company'' in letters one-eighth inch in height, although clearly printed thereon, did not overcome the possibility of confusion.

It is true as appellant says that Bellows Whiskeys, in addition to the trade-mark ''Bellows'' at the top of each label, also bear a brand name such as ''Partners. Choice,'' ''Club Special,'' ''Private Stock,'' etc., whereas ''Fellows'' is the entire brand name in the case of appellant's whiskey. This would seem to present an argument for respondent. ''Bellows'' is the outstanding feature that all respondent's whiskeys have in common, ''Bellows'' is the word emphasized in advertising, the word most likely to be remembered. New customers who might be reached by Bellows' advertising, and who would not be familiar with their various types of

whiskeys, might easily believe that since there is just one brand of Fellows, that it was Fellows whiskey which they had seen or heard advertised. Since a large amount of such a product is sold by bars, the possibility of confusion in such cases is obvious. The protection that is extended is to the buying public, the casual, average purchaser, and not just to the wholesale buyer or the long established customer. (See 2 Nims, Unfair Competition and Trademarks (4th ed.), pp. 1019-1020.) The rule set forth in the Restatement of the Law of Torts, vol. III, section 728, page 591, is as follows: ''The similarity between a designation and a trade-mark or trade name which it is alleged to infringe is not determined by comparing the two in juxtaposition only. Since it is the effect upon prospective purchasers that is important, the conditions under which they act must be considered. Purchasers do not always see the goods in juxtaposition. They rely upon memory and vague impressions.'' (See *Albert Dickinson Co.* v. *Mellos Peanut Co.,* 179 F.2d 265.) This is particularly significant where as in this case respondent has spent large sums in advertising throughout the United States of which several thousands of dollars have been spent within this state.

Appellant quotes the rule of a recent California case on the test of what constitutes an infringement of any trade-mark, whether a technical trade-mark or one which has acquired a secondary signification, as follows: ''What degree of resemblance is necessary to constitute infringement is incapable of exact definition as applicable to all cases. All that courts of justice can do in that regard is to say that no trader can adopt a trade-mark so resembling that of another trader, as that ordinary purchasers buying with ordinary caution are likely to be misled.'' (*Scudder Food Products* v. *Ginsberg,* 21 Cal.2d 596, 600 [134 P.2d 255].) Appellant states that the entire dress, the *tout ensemble,* of the packages must be compared, and that in the instant case they are entirely dissimilar. However, the bottles are of the same general size, shape and color. The background of the labels do not differ much in size or shape and both are white. Some of the printing on each label is similar in style and color, some is different. Both labels have emblems circular in design. The word ''Fellows'' which is probably the most striking feature of appellant's label is in red tinged with gold, and the word ''Bellows'' is in black and white on some of respondent's brands, on others it is in black and white with a shade of red. Clearly, then, even if this is the true test, as appellant

claims, there are points of similarity and points of difference, and the most striking similarity is between the words "Bellows" and "Fellows." Therefore, this court cannot say that as a matter of law the ordinary purchaser would not be deceived, or that there is not substantial evidence as a basis for the trial judge's decision.

The "ordinary purchaser" has undoubtedly been described in a variety of ways. In *Sun-Maid Raisin Growers of California* v. *Mosesian*, 84 Cal.App. 485, 495 [258 P. 630], this court said:

"The test as to infringement against a trademark does not depend upon an exact similarity in every detail, but if the general appearance is such as to deceive a casual purchaser who exercises ordinary care in the selection of the article which he wishes to buy, its use may be enjoined. (Nims on Trade-Marks, 2d ed., pp. 235, 585; *Canterbury Candy Makers* v. *Brecht Candy Co.*, 294 F. 1013, 54 App.D.C. 82; *Gehl* v. *Hebe Co.*, 276 F. 271; *O. & W. Thum Co.* v. *Dickinson*, 46 App.D. C. 306; *National Biscuit Co.* v. *J. B. Carr Biscuit Co.*, 55 App. D.C. 146, 3 F.2d 87; *McLean* v. *Fleming*, 96 U.S. 245 [24 L.Ed. 828, see, also, Rose's U.S. Notes].) In the last case cited it is said: 'What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trade-mark, so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution are likely to be misled. . . . Much must depend, in every case, upon the appearance and special characteristics of the entire device; but it is safe to declare, as a general rule, that exact similitude is not required to constitute an infringement or to entitle the complaining party to protection. If the form, marks, contents, words, or the special arrangement of the same, or the general appearance of the alleged infringer's device, is such as to be likely to mislead one in the ordinary course of purchasing the goods, and induce him to suppose that he was purchasing the genuine article, then the similitude is such as entitles the injured party to equitable protection, . . .' In *Spieker* v. *Lash*, 102 Cal. 38, 45 [36 P. 362, 363], in which a judgment for plaintiff was affirmed, it is said: 'The evidence shows that the defendants' labels, while differing in some respects from those of the plaintiff, are a colorable imitation of them, the resemblance being such as to justify the conclusion that they were intended and adapted to lead the public generally to

the belief that the manufacture of the original "Lash's Kidney and Liver Bitters," had been superseded . . . '

"Numerous authorities show a like effort to use similar words conveying the same idea, sound, or appearance, by altering the spelling, or disarranging the sequence of letters. Among these cases the following similar words have been held to constitute an infringement: Coco-Cola—Extract of Coca & Kola; Coca-Cola—Take Kola; Holeproof—No-Hole; Lily White—White Lily; Uneeda—Iwanta (*National Biscuit Co.* v. *Baker,* 95 F. 135); Sapolio—Sapono; Hostetter's Bitters—Host Style Bitters; Cascarets—Castorets; Gold Bar—Gold Band; Silver Bar—Silver Band; Stove lustre—Stove lacquer; Listerine—Lister septine; Celluloid—Cellonite; Cottolene-Cottoleo; Cottolene—Chefolene (*N K. Fairbanks Co.* v. *Ogden Packing & Provision Co., supra* [220 F. 1002]); Gold Dust—Gold Drop (*N. K. Fairbanks Co.* v. *Luckel, King & Cake Soap Co.,* 102 F. 327); Beats-All—Knoxall (*American Lead Pencil Co.* v. *L. Gottlieb & Sons,* 181 F. 178); Keepclean—Sta-Klean; Crisco—Esco (*Proctor & Gamble Co.* v. *Eney Shortening Co.* 50 App.D.C. 42, 267 F. 344.)"

In *Jackman* v. *Mau,* 78 Cal.App.2d 234, 239 [177 P.2d 599], it was said that "it is not necessary as a prerequisite to obtaining equitable relief in cases of this character that the names be identical. It is sufficient if though not identical they are sufficiently similar as to cause confusion and injury (*Academy of Motion Picture Arts & Sciences* v. *Benson,* 15 Cal.2d 685, 692 [104 P.2d 650].) In the case just cited, (p. 692) the Supreme Court quotes with approval the following rule enunciated in the case of *Celluloid Mfg. Co.* v. *Cellonite Mfg. Co.,* 32 F. 94, at page 97: 'Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead *an ordinary unsuspecting customer* is obnoxious to the law'." (Emphasis ours.)

In the recent Stork Club case which arose in California when the New York club sought to enjoin use of its name by a San Francisco establishment which was not connected in any way with the former, the Circuit Court of Appeals declared that "it may well be true that a prudent and worldly-wise passerby would not be so deceived. The law, however, protects not only the intelligent, the experienced, and the astute. It safeguards from deception also the ignorant, the

inexperienced and the gullible. . . . The law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearance and general impressions.'' (*Stork Restaurant, Inc.* v. *Sahati,* 166 F.2d 348, 359.)

In *Macleay Duff (Distillers) Ltd.* v. *Frankfort Distilleries, Inc.,* 129 F.2d 695 (1942) the court held the trade-mark DUFF's for whiskey confusingly similar to DUFFY's for whiskey. In that opinion it was noted that the general public in the purchase of whiskey, not being connoisseurs, order the commodity simply according to name or brand. Since the difference in appearance and sound between the two words was so slight the court thought it reasonable to hold that their concurrent use on whiskey would be likely to confuse the mind of the public or deceive purchasers as to origin.

Appellant points, however, to the case of *Alexander Young Distilling Co.* v. *National Distillers Products Corp.,* 40 F. Supp. 748, in which the court held that the trade-mark ''PM'' for whiskey did not infringe the trade-mark ''YPM.'' ''PM'' was an abbreviation of Penn.-Maryland, the name of defendant's subsidiary. The evidence showed that the trade-mark ''YPM'' had never been heard of by defendant when it chose the brand ''PM.'' However the court noted that if the public was misled, the use would be enjoined regardless of intent. The court observed that plaintiff had two brands, Blue Label and Yellow Label, of different prices and qualities. Therefore they believed a customer would not be deceived by being given a ''PM'' whiskey when he ordered a ''YPM.'' However the court also stated that there could be an element of confusion in such names as ''P & G'' and ''B & G''; ''Rinex'' and ''Pinex,'' but because the letter Y was missing from defendant's trade-mark no such element of confusion would exist ''(regarding the names per se) as would justify injunctive relief.'' That case differs also from the present, in that there the defendants presented an abundance of evidence by purchasers that confusion had not resulted to the public.

It is noted in 52 American Jurisprudence, page 603, section 129, ''When prompt action is taken against the use of a similar name before the second comer has established himself, a greater distinction in name may reasonably be demanded.'' (*Federal Securities Co.* v. *Federal Securities Corp.,* 129 Ore. 375 [276 P. 1100, 66 A.L.R. 934].) ■ Since in the present case only about 1,000 cases bearing the trade-mark ''Fellows''

had been sold evidence of possible confusion would not need to be as impressive as it would in a case where the product had been on the market for a considerable period.

Appellant admitted at the trial that proof of actual confusion is not necessary in an action for trade-mark infringement or unfair competition when the facts are such that it can be concluded that confusion would result to the ordinary purchaser. This seems to be well established in this state. In *Winfield* v. *Charles,* 77 Cal.App.2d 64, 70 [175 P.2d 69], the court said that it was unnecessary "to show that any person has been confused or deceived. It is the likelihood of deception which the remedy may be invoked to prevent." It was also held in *Sun-Maid Raisin Growers of California* v. *Mosesian,* 84 Cal.App. 485, 497 [258 P. 630], that it is "not necessary to prove actual fraud or deception, but this may be assumed where the facts indicate that a purchaser exercising ordinary care, would be likely to be deceived by the imitation of a trademark. (Citing authorities.)" See, also, *California Prune etc. Assn.* v. *H. R. Nicholson Co.,* 69 Cal.App.2d 207, 221-222 [158 P.2d 764], *Weatherford* v. *Eytchison,* 90 Cal.App.2d 379, 384 [202 P.2d 1040]. In the case of *Hat Corporation of America* v. *D. L. Davis Corp.,* 4 F.Supp. 613, where plaintiff had used the trade-mark "Dobbs" on hats for many years, William H. Dobbs, a son of plaintiff's founder, who had previously been connected with plaintiff, attempted to license to defendant his name "W. H. Dobbs" for use on hats, and the court said "its close similarity to the name 'Dobbs', so long used by plaintiff and its predecessors and so thoroughly established as indicating plaintiff's product" clearly gave rise to an inference of fraud. (See, also, *Dodge Stationery Co.* v. *J. S. Dodge Co.,* 145 Cal. 380 [78 P. 879].)

Appellant has also contended that since "Bellows" is a trade-mark and "Fellows" is a brand name, there cannot be any possible confusion. However, the name "A. J. Fellows" was registered by appellant as a trade-mark with the secretary of state. It is clear therefore that "Fellows" is used in a trade-mark sense.

The fact that the true producer's name does appear on appellant's product does not justify a colorable imitation of respondent's trade-mark. In *Menendez* v. *Holt,* 128 U.S. 514, 521 [9 S.Ct. 143, 32 L.Ed. 526], a case wherein plaintiff had a trade-mark in the words "La Favorita," it was held to be no answer by defendant that his own name appeared thereon instead of plaintiff's. The court said: "That is an aggravation

and not a justification, for it is openly trading in the name of another upon the reputation acquired by the device of the true proprietor."

There is also no merit in the argument that because respondent used other trade-marks or brands in addition to that of "Bellows" on its labels, there can be no infringement by the word "Fellows" on appellant's label. It is well established that the fact "that the owner of a trade-mark uses in association with it accessory symbols or words does not deprive him of the right to it." (*Layton Pure Food Co.* v. *Church & Dwight Co.*, 182 F. 24 [104 C.C.A. 464]. See, also, *General Shoe Corp.* v. *Rosen*, 111 F.2d 95, 99; *Alfred Schneider Co., Inc.* v. *Bramson*, 16 F.Supp. 493, 494; *International Cheese Co.* v. *Phenix Cheese Co.*, 118 App.Div. 499 [103 N.Y.S. 362].)

Appellant cites *Southern Calif. Fish Co.* v. *White Star Canning Co.*, 45 Cal.App. 426 [187 P. 981]; *American Automobile Assn.* v. *American Auto. Owners Assn.*, 216 Cal. 125 [13 P.2d 707]; *Purity Springs Water Co.* v. *Redwood Ice Delivery*, 203 Cal. 286 [263 P. 810]. These cases are all distinguishable from the instant case on their facts. And the case of *National NuGrape Co.* v. *Guest*, 164 F.2d 874, also cited by appellant, is distinguishable in that there could be no infringement there because the trade-mark, though registered, was invalid as a mere descriptive term.

As hereinbefore quoted from *Scudder Food Products* v. *Ginsburg, supra,* "The degree of resemblance necessary to constitute an infringement is incapable of exact definition as applicable to all cases. All that courts of justice can do in that regard is to say that no trader can adopt a trade-mark so resembling that of another trader, as that ordinary purchasers buying with ordinary caution are likely to be misled."

The learned trial judge, who had the advantage of many years of business experience, as well as many years of service as a trial judge, heard all of the evidence and observed all labels, bottles and other exhibits. We believe that he was in a good position to determine whether the trade-mark adopted by appellant in the instant case so resembled that of respondent that ordinary purchasers buying with ordinary caution are likely to be deceived. Notwithstanding the earnest and able argument of counsel for appellant we are convinced that under the authorities hereinbefore referred to there was substantial evidence to support the findings of the trial court that: "Each and both of the trade mark 'Fellows' and 'A. J. Fellows' are

colorable imitations and infringements of the trade-mark 'Bellows' and the corporate name 'Bellows & Company, Inc.;'" that "the use of such trade-marks is likely to cause confusion or mistake and to deceive the public into purchasing goods bearing said trade-marks in the belief that such goods are the goods of Bellows & Company, Inc. to the injury and damage of Bellows & Company, Inc.;" and that "the continued use of the trade-marks 'Fellows' and 'A. J. Fellows' by defendant corporation would result in unfair competition with Bellows & Company, Inc." ▉ We are convinced by the record, including the exhibits, and by the findings of the court, that the use of the trade-mark "Fellows" and "A. J. Fellows" was, in the language of *Thaddeus Davids Co.* v. *Davids, supra,* "such as is calculated to mislead the public with respect to the origin or ownership of the goods and thus to invade the right of the registrant to the use of the name or term as a designation of his merchandise" and that it constituted infringement.

It follows from the foregoing that the judgment enjoining appellant from using the names "Fellows," and "A. J. Fellows" in the manufacture, sale, distribution and advertising of their whiskey and other alcoholic beverages should be, and the same is hereby affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied February 24, 1951, and appellant's petition for a hearing by the Supreme Court was denied March 26, 1951. Carter, J., and Schauer, J., voted for a hearing.