LOOZ, Inc. v. ORMONT et al.

ORMONT et al. v. LOOZ, Inc.

No. 14617-T.

United States District Court
S. D. California, Central Division.
July 27, 1953.

212

Mason & Graham, Collins Mason, William R. Graham, Reuben Freedman, Los Angeles, Cal., for plaintiff and cross-defendant.

J. G. Moser, Beverly Hills, Cal., for defendant and cross-complainant.

YANKWICH, Chief Judge.

On May 6, 1947, the plaintiff, an Illinois corporation, began using the trade name of "Looz" in conjunction with a saline cathartic. On August 19, 1948, it applied to the United States Patent Office for its registration as a trade mark. 15 U.S.C.A. § 1051 et seq. It was allowed on December 4, 1951. The mark consisted of four block letters, the end letters being about twice the size of the two center letters. Above the two center letters in the mark is the portrait of a girl in a circle, the circle being shaded on the inside. The statement, as finally allowed, read:

"Looz, Inc., a corporation duly organized under the laws of the State of Illinois, located at Chicago, Illinois, and doing business at 4804 West Chicago Avenue, Chicago 51, Illinois, has adopted and is using the trade-mark shown in the accompanying drawing, for a Saline Cathartic, in Class 18, Medicines and pharmaceutical preparations, and presents herewith five specimens showing the trade-mark as actually used in connection with such goods, the trade-mark being applied to tags or labels affixed to the containers for the goods, and requests that the same be registered in the United

States Patent Office on the Principal Register in accordance with the act of July 5, 1946. The portrait of the girl appearing on the drawing is fanciful. The lining in the mark and drawing is used to indicate shading.

"The trade-mark was first used on May 6, 1947, and first used in commerce among the several States which may lawfully be regulated by Congress on May 6, 1947.

"Looz, Inc.

"By Andrew M. Begale,

"President."

The trade-mark finally registered in the Principal Register bore No. 551474.

Exhibit A

**Registered Dec. 4, 1951**

**Registration No. 551,474**

## PRINCIPAL REGISTER
## Trade-Mark

# UNITED STATES PATENT OFFICE

**Looz, Inc., Chicago, Ill.**

**Act of 1946**

**Application August 19, 1948, Serial No. 563,746**

## STATEMENT

Looz, Inc., a corporation duly organized under the laws of the State of Illinois, located at Chicago, Illinois, and doing business at 4804 West Chicago Avenue, Chicago 51, Illinois, has adopted and is using the trade-mark shown in the accompanying drawing, for a SALINE CATHARTIC, in Class 18, Medicines and pharmaceutical preparations, and presents herewith five specimens showing the trade-mark as actually used in connection with such goods, the trade-mark being applied to tags or labels affixed to the containers for the goods, and requests that the same be registered in the United States Patent Office on the Principal Register in accordance with the act of July 5, 1946. The portrait of the girl appearing on the drawing is fanciful. The lining in the mark and drawing is used to indicate shading.

The trade-mark was first used on May 6, 1947, and first used in commerce among the several States which may lawfully be regulated by Congress on May 6, 1947.

LOOZ, INC.,

By ANDREW M. BEGALE,

*President.*

On July 8, 1952, the plaintiff registered his trade-mark with the Secretary of the State of California, Calif. Bus. & Prof. Code, § 14270. In the labels on which the mark was used by the plaintiff, the product to which it applied was characterized as "a saline cathartic". The injunction contained on it was to eat more leafy vegetables, fruit and fruit juices, eat less starchy food such as white bread, potatoes, sweets, fatty foods, etc. The direction for taking was two tablets at bedtime and two tablets before breakfast with a glass of water.

terstate commerce. Then in March of 1952, it developed a new formula which was actually manufactured for it by a pharmaceutical concern and put on the market on June 18, 1952. While the same mark was attached to the product and it was called an "improved formula", it was an entirely different product. Instead of being a cathartic, the primary object of which is to aid elimination of wastes from the body, it was designated as "a dietary supplement", designed to help curb and lessen the appetite by providing added non-nutritive

Exhibit B

## I
## Distinctive Trade-Marks

Although the labels and the mark stressed the product as a cathartic, in the advertising the reducing quality of the product was stressed. Plaintiff advertised its product in newspapers in the States of Illinois and Indiana. It sold its products through dealers who advertised it through newspapers and wholesalers who distributed it in interstate commerce. While the evidence is rather slight as to any sales made in California, it may be assumed that some of the advertisements circulated in California. There is evidence that the Chicago newspapers in which some of the advertisements appeared, had a slight circulation in California.

After some controversy with the United States Food and Drug Administration, the plaintiff, in 1951, for over a year, desisted from the sale of the product in in-

bulk (Loozine), and supply certain vitamins and minerals.

The defendants, in the latter part of 1951, began to use the word "Looz" on a preparation called "a dietary reducing aid". The mark did not use the fanciful woman's figure which is a part of the plaintiff's mark, but the advertising throughout insisted on the reducing effects of the formula. Although the defendants used separate corporate structures controlled by members of the same family to divide the business in which they were engaged, one concern selling direct to the public, another selling only to wholesalers, no attempt was made to secure any status for "Looz". While the advertisements referred to the product as being manufactured by Looz, the evidence showed that at no time was a certificate filed under the law of California, showing that some of the defendants were doing business under the name. Cal.Civil

Exhibit C

Code, §§ 2466–2470. This, despite the fact that some of the labels contained the statement "Manufactured for and distributed by Looz". As the principal defendant, Mr. Ormont admitted, there never was, in fact, such an organization. The only entity of the kind is the plaintiff's organization, which has used "Looz" as a corporate name and as a trade name and a part of its mark since 1947.

The plaintiff has expended large sums of money during the period of its existence in advertising both its old and new product. While the amount so expended does not compare with that spent by the defendant, it is, nonetheless, substantial. The defendant, it should be noted, has literally saturated the air lanes of the eleven western States with radio advertising of its product. It was admitted that during one period nearly one-half million dollars in advertising produced sales of only $650,-000. That the defendant's advertising may have, indeed, helped the plaintiff need not be denied. But here again, we are confronted with the question of prior right and use both in the realm of trade mark and unfair competition.

We dispose of the claim of the defendant that it is entitled to relief by way of cross complaint by pointing to the fact that it is the late-comer in the field, that it has appropriated a substantial part of the plaintiff's trade name and mark, that it has referred in its advertising to a non-existent organization named Looz for which the product "is manufactured" and has not even taken the trouble of taking out a certificate of doing business under such fictitious name. Under no principle of law or equity would the defendant be entitled to relief in the circumstances.

The real problem is: Is the plaintiff entitled to relief under the complaint on the theory of infringement of the plaintiff's trade mark or unfair competition?

Plaintiff seeks relief by way of injunction and damages, under both theories.

## II

### Trade Names and Trade Marks

We consider briefly some fundamental legal principles.

In the law of the United States, a trade name or trade mark does not exist in gross, as an abstract or independent property right. It is only a method used by a person to designate his business or his goods. It exists only as appurtenant to an established business or trade in connection with which it is used. 3 Callman: Unfair Competition and Trade-Marks, 2nd ed., 1950, Sec. 66.3, p. 1103: Treager v. Gordon-Allen, Limited, 9 Cir., 71 F.2d 766, 768; Hanover Star Milling Co. v. Metcalf, 1916, 240 U.S. 403, 406, 413, 36 S.Ct. 357, 60 L.Ed. 713; see the writer's opinion in Brooks Bros. v. Brooks Clothing Co. of Calif., D.C.Cal.1945, 60 F.Supp. 442, 449, and cases cited in Note 12 of that opinion.

■■ A mark which is merely descriptive is not entitled to registration. 15 U.S. C.A. § 1052(e) (1); Cal.Bus.& Prof. Code, § 14201. And if registered, it does not close the field to others who use it in a modified form for different purposes.

■ It is, at times, difficult to determine of what distinctiveness consists. 3 Callman, op.cit., Sec. 69. But, generally, if the mark merely carries to the purchaser the image of a specific product or the quality associated with it, or the object for which the product is intended, it lacks distinctiveness and is not the subject of exclusive appropriation. Thus, the term "gall cure" in conjunction with the representation of a horse could not be appropriated exclusively for use by the makers of a remedy for horses. Bickmore Gall Cure Co. v. Karnes Mfg. Co., C.C.Pa.1903, 126 F. 573. The word "Rid-Jid" on an ironing table, step ladders or stepstools could not be the subject of exclusive appropriation, as the mark merely described the "rigid" quality of the goods. J. R. Clark Co. v. Rich Ladder & Mfg. Co., 1948, 168 F.2d 314, 35 C.C.P.A., Patents, 1197. A pictorial representation of a can with powder flowing from it into a toilet bowl could not constitute an exclusive trade mark for a toilet bowl cleaner. Judson Dunaway Corp. v. Hygienic Products Co., 1 Cir., 1949, 178 F.2d 461. The use of "Rite-Rite" in a trade name of pens did not prevent the use of "Rite-Craft" by another. Rite-Rite Mfg. Co. v. Rite-Craft Co., 1950, 181 F.2d 226, 37 C.C.P.A., Patents, 963. See, Walgreen Drug Stores, Inc. v. Obear-Nester Glass Co., 8 Cir., 1940, 113 F.2d 956.

In these, as in other cases, the courts have been generous in protecting the person who has sought to identify his business or the goods he sold. And even when denying him exclusiveness, they have allowed him to stay in the field if he had added something to an ordinary word either by way of an illustration or otherwise, to identify his product.

■ If these principles are applied to the facts in this case, it becomes evident that the plaintiff's mark in its original form is good. The trade mark is for a "saline cathartic". The word "LooZ" evidently is the misspelling of the word "lose". Neither it nor the picture of the woman accompanying it has anything to do with a laxative, the object of which is to allow an easier elimination of waste materials. In American pharmacopoeia, a laxative is not considered as aiming at reducing a person's weight, although one might conceive that excessive use might so prevent a person from properly digesting food that a slight reduction in weight might result. The average person does not buy a laxative for the purpose of losing weight. So that, assuming that the word "LooZ" stands for "lose", it does not, either alone or in conjunction with the fanciful picture of the woman in a circle, describe a laxative, saline or other. Much less does it describe a product aimed to reduce excessive weight from persons using it. So, in that respect, the trade mark *as registered and as originally used* is not merely descriptive. But when we come to the new formula, the situation alters. For the new formula changes entirely the nature of the product to which the mark attached from "a saline cathartic" to "a dietary food supplement", the chief aim of which is to achieve reduction in weight.

### III
### Appropriation of Trade Name as Unfair Competition

The defendant has appropriated the word "Looz" without the fanciful woman's figure encased in a circle. It uses it on the product which is definitely claimed to reduce weight. Its advertising emphasizes that fact and blatantly calls it "fool-proof". In the minds of persons who have seen the newspaper advertisements and listened to the radio advertisement, there is confusion of source. This extended to the drug trade. The plaintiff listed the product in the catalogue of the trade known as the "Drug Topics Red Book". There are, in the record, communications addressed to the plaintiff indicating confusion of source caused by the defendant's product. A representative of one of the large drug companies, McKesson and Robbins, complained by letter to the plaintiff that a price offer was being made by one of plaintiff's representa-

tives which was different from the price at which they were purchasing the product from the plaintiff. The fact was that the offer was being made by the agents of the defendant.

When there is a conflict between marks and the original mark is not a strong one, courts, at times, have apportioned territory. Hanover Star Milling Co. v. Metcalf, 1915, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Co. v. Theodore Rectanus Co., 1918, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141. In view of this, the defendants urge that, as the business of the plaintiff was localized, to a certain extent, in the States of Illinois and Indiana, and other middle western States, while theirs has been developed in the eleven Pacific Coast States, the businesses might co-exist without interference.

But in the realm of unfair competition, we are dealing with practices which injure the public by creating confusion as to the source of goods. See, American Distilling Co. v. Bellows and Company, 1951, 102 Cal.App.2d 8, 25, 226 P.2d 751. When this is the case, and we are not confronted with persons who innocently have adopted, at or about the same time, the same trade mark or trade name, as was the situation in the cases just cited, equitable considerations call for different action.

 When the first comer in the field has had a distinct word as its corporate name, has used it as a trade name, has had a trade mark under that name, and has marketed under it products for a period of years, the later appropriator is not entitled

to the protection of equity at the expense of public confusion. See, Jackson v. Universal International Pictures, Inc., 1950, 36 Cal.2d 116, 222 P.2d 433. And so the conclusion to be reached in this case can be stated briefly in this manner:

The plaintiff has been using the word "LooZ" as a trade name and as a corporate name since 1947. It has a trade mark in California and a federal trade mark embodying the name "LooZ". As to the product for which the registrations were made, the mark *was not* descriptive. The defendant has not applied the mark to a product similar to the original product. As to the product which came into later use and which the defendant is also marketing, the word "Looz" is not distinctive but descriptive because it stresses loss of weight as the result of consuming the product. So the defendants are not infringing the registered mark. But they are using a name which has been preempted by others, and used legitimately as a trade name and the name of a corporation. They are using it in such manner as to give the impression that their product is manufactured for and distributed by a concern named "Looz" and there is only one legal concern named "Looz" in the field, that of the plaintiff. See, Eastern Columbia, Inc. v. Waldman, 1947, 30 Cal.2d 268, 271, 181 P.2d 865; Note, Trade Name Infringement as Unfair Competition, 1953, 40 Cal.Law Rev. 571.[1]

 It is elementary that unfair competition may exist in the absence of trade

---

1. There are to be found in the books, many cases decided before Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 65, 58 S.Ct. 817, 82 L.Ed. 1188, and dating to a time when unfair competition was governed by general federal principles and not, *as now*, by State law, in which the appropriation of a substantial part of a trade-name, under circumstances similar to those existing in this case, was forbidden under the law of unfair competition, where the similarity was such as likely to lead to confusion. And this, regardless of the validity or invalidity of the trademark and although the word appropriated was an ordinary English word. Illustrative are: "Home Comfort" as the title for a magazine in favor of the first

user who had applied the word "Comfort" to a publication. Gannert v. Rupert, 2 Cir., 1904, 127 F. 962. "Sta-Kleen" for a tooth brush against a prior user of the word "Keepclean". Florence Mfg. Co. v. J. C. Dowd & Co., 2 Cir., 1910, 178 F. 73. "Photo-Play Journal" for a magazine devoted to motion picture productions in favor of a prior user of "Photoplay" for a magazine of similar character. Photoplay Pub. Co. v. La Verne Pub. Co., 3 Cir., 1921, 269 F. 730. "Queen Brand" as applied to women's apparel in favor of the prior user of "Queen Make". Queen Mfg. Co. v. Isaac Ginsberg & Bros., 8 Cir., 1928, 25 F.2d 284. "Fashion Row" as applied on both men's and women's apparel as

mark infringement. Brooks Bros. v. Brooks Clothing Co., D.C.Cal.1945, 60 F. Supp. 442, 447, and cases cited in Footnote 6 of that case. When this is the case, a different measure of damages applies. In trade mark infringement, presumption of loss is inferred from proof of use of the mark and evidence of sales, while in unfair competition, the law calls for proof of actual loss of sales. Mishawaka Rubber & Wool Mfg. Co. v. S. S. Kresge Co., 1942, 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381; Champion Spark Plug Co. v. Sanders, 1947, 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386; Modesto Creamery v. Stanislaus Creamery Co., 1948, 168 Cal. 289, 295, 142 P. 845; J. C. Penney Co. v. H. D. Lee Mercantile Co., 8 Cir., 1941, 120 F.2d 949, 958.

Judgment will, therefore, be for the plaintiff on the ground of unfair competition for injunction and damages.

See also D.C., 99 F.Supp. 766.

against "Fashion Park" similarly applied. Fashion Park, Inc., v. The Fair, 1931, 49 F.2d 830, 18 C.C.P.A., Patents, 1399. "Toilet-San" as applied to porcelain cleaner in powder form in favor of prior user of "Sani-Flush". Hygienic Products Co. v. Huntington Laboratories, Inc., 1943, 139 F.2d 508, 31 C.C.P.A., Patents, 773. "Blind-Kraft" as applied to brooms, brushes, mops and furniture made by blind persons in favor of "Blindcraft" similarly applied. San Francisco Ass'n for the Blind v. Industrial Aid for the Blind, Inc., 8 Cir., 1946, 152 F.2d 532. "General Finance Loan Company" and "General Finance Corporation" as applied to a firm engaged in making small business loans in favor of a prior user for the same business of the name "General Loan Company". General Finance Loan Co. v. General Loan Co., 8 Cir., 1947, 163 F.2d 709, 710.

In most of the cases just cited,—excepting Queen Mfg. Co. v. Isaac Ginsberg & Bros., supra; Fashion Park, Inc., v. The Fair, supra; Hygienic Products Co. v. Huntington Laboratories, Inc., supra; and, San Francisco Ass'n for the Blind v. Industrial Aid for the Blind, Inc., supra; which turned on the validity of the trademark,—the courts enjoined the late comer in the field despite the fact that the word appropriated was *an ordinary word*. They held that even an ordinary word could, by use, become so associated with a particular business as to warrant enjoining others, under the doctrine of unfair competition, from using it in similar businesses.