[L. A. No. 17939. In Bank. Feb. 17, 1943.]

SCUDDER FOOD PRODUCTS, INC. (a Corporation), Appellant, v. MAX I. GINSBERG et al., Respondents.

W. I. Gilbert, Jr., and Jean Wunderlich for Appellant.

Sherman & Sherman, Austin Sherman and W. B. Thomas for Respondents.

THE COURT.—This cause was taken over after decision by the District Court of Appeal, First Appellate District, Division Two. Upon further examination of the record we adopt the opinion of Mr. Justice Sturtevant as part of the decision of this court. It reads as follows:

"The plaintiff commenced an action against the defendants to obtain an injunction restraining the defendants from unfair trade dealing. Its complaint contained five separate counts. The defendants appeared and filed a demurrer. The demurrer was sustained and from the judgment the plaintiff has appealed.

"In its brief the plaintiff sets forth an abstract of the first count. In substance that abstract is as follows. The plaintiff is and since 1929 has been a corporation; that Max I. Ginsberg, Jeanette Ginsberg and Sol Gendel are directors of Bell Nut Products, a corporation in dissolution; that Max I. Ginsberg is and has been doing business under the name of Bell Potato Chip & Pretzel Co.; that Max I. Ginsberg is and has been doing business under the name of Los Angeles Saratoga Chip & Pretzel Co.; that plaintiff has been engaged in manufacturing food products in southern California and has built up a valuable good will; that it puts up its products in containers and packages with distinctive characteristic labels and designs; that defendants have imitated such distinctive and characteristic containers and packages together with the labels and designs; that among others since February 1, 1940, plaintiff has put up a certain bag containing twelve ounces of merchandise; that said bag is attached as Exhibit A; that within four months thereafter defendants put up a similar bag, a sample of which is attached to the complaint and marked Exhibit B; that plaintiff's mode of packing became associated in the mind of the public with plaintiff's goods and that except for the defendants' acts the public could have continued to easily and readily and without the necessity of close reading identify plaintiff's merchandise; that defendants' acts are for the express purpose of misleading the public; that the similarity in packages is such that the public are and have been misled; and that by reason of the acts of defendants plaintiff has been damaged in the sum of $25,000. The second count contains similar allegations but with ref-

erence to a different package or container. One of the plaintiff's containers is annexed as Exhibit C, and one of defendants' containers is annexed as Exhibit D. Damages in the sum of $25,000 are alleged in that count also. In the third count similar facts are alleged regarding a three pound box. No exhibit is attached but the plaintiff's box is described in detail and the defendants' box is also described in detail. Damages in the sum of $25,000 are also alleged. The fourth count contains similar averments regarding a label used by the plaintiff. A copy is set forth as Exhibit E. The defendants' label is set forth as Exhibit G. Damages in the sum of $25,000 are also alleged. The fifth count alleges similar facts and describes a package of potato chips put up by the plaintiff which contains a weight of seven ounces. In paragraph III it is alleged that defendants offer a bag of light weight for sale, showing on the face thereof a price of 25 cents, instructing the retail dealers, however, to sell this bag for 15 cents. In paragraph IV it is alleged that the arrangements alleged in paragraph III lead the purchasing public to believe that they are getting 25 cents of potato chips for 15 cents, if they shop with defendants, but they do not get 25 cents worth of potato chips for 15 cents, when they shop with the plaintiff. It is alleged that this device is used in order to induce purchasers who purchase from the plaintiff to purchase from the defendants. It is further alleged that the acts stated are done with a fraudulent intent to injure and divert the business of the plaintiff and to deprive plaintiff of profits which would otherwise accrue. Damages under this count are also alleged in the sum of $25,000.

 ''Before proceeding further it should be noted that the foregoing pleading does not even purport to allege that either party had a trademark nor that a trademark has been infringed. *Sun-Maid Raisin Growers* v. *Mosesian*, 84 Cal.App. 485 [258 P. 630], and cases there cited, need not be discussed. Nor is it claimed that the trade name of a store or the proprietor has been pirated. It is therefore patent that *American Automobile Assn.* v. *American Automobile O. Assn.*, 216 Cal. 125 [13 P.2d 707, 83 A.L.R. 699], and cases there cited, need not be dwelt upon. Nor is any attempt made by the plaintiff to allege that it was the first in the field of action to use a specific trade name and had built up an established trade thereunder and that the defendants were newcomers who have attempted, and are now attempting, to pirate the

plaintiff's trade name and established trade. It follows that the case entitled *Weinstock, Lubin & Co.* v. *Marks,* 109 Cal. 529 [42 P. 142, 50 Am.St.Rep. 57, 30 L.R.A. 182], is not necessarily controlling. Nevertheless the question remains whether the plaintiff has a cause of action against the defendants by reason of unfair competition. (24 Cal.Jur. 628.) In *Katz* v. *Kapper,* 7 Cal.App.2d 1, 4 [44 P.2d 1060], the court said: 'In deciding whether the conduct of defendants, alleged in the complaint is actionable, it is necessary to apply certain well-settled rules relating to competition in business. These may be generally stated as follows: "Competition in business, though carried to the extent of ruining a rival, is not ordinarily actionable, but every trader is left to conduct his business in his own way, so long as the methods he employs do not involve wrongful conduct such as fraud, misrepresentation, intimidation, coercion, obstruction, or molestation of the rival or his servants or workmen, or the procurement of the violation of contractual relations. If disturbance or loss comes as the result of competition, or the exercise of like rights by others, as where a merchant undersells or oversells his neighbor, it is *damnum absque injuria.*" (15 R.C.L., p. 73, and cases cited.) '

"Counts one and two being the same except they are addressed to different sized packages and containers may be considered together. In those counts the plaintiff has pleaded exhibits. Such exhibits show the defendants are using such colors, printing, paper, boxes, and combinations of color, printing, and arrangement as anyone engaged in trade is entitled to use and therefore the plaintiff may not complain. They are all common to the public. 'Plaintiff must show deception arising from some feature of its own, not common to the public.' (*Southern Cal. F. Co.* v. *White Star C. Co.,* 45 Cal.App. 426, 430 [187 P. 981].) In said counts plaintiff has not stated a cause of action. The allegation of 'imitation' frequently made adds nothing to the pleading regarding matters common to the public.

"Count three does not plead exhibits. However paragraph two pleads a detailed description of plaintiff's three-pound box and paragraph three pleads a detailed description of defendants' three-pound box. All that we have said with reference to counts one and two is equally applicable to count three.

"Count four is addressed to labels. Exhibits are at-

tached showing plaintiff's label and defendants' label on similar products. They are different and the difference is so pronounced that one who runs may read. Both sets are the labels used respectively by the plaintiff and defendants on their packages of peanut butter. Said labels include two sets for each package. Exhibit E is plaintiff's. It is an·oval the size of a turkey egg. Exhibit F is defendants'. It is a bell 2¼ inches high and 2¼ inches in diameter. Both have a dark navy blue background. Both have lettering in gold. Each has the words 'Peanut Butter' printed thereon. There is not another similar feature. The other set has a yellow background. Each label has some printing in red, some in black, some in white. On the plaintiff's there is a blue bird. On the defendants' there is a blue bell. Speaking of a similar contention, in *Purity Springs W. Co.* v. *Redwood Ice Dlvy.*, 203 Cal. 286, 289 [263 P. 810], the court said: 'Without attempting to convey the exact contour and form of said labels or their complete wording, it is sufficient to say that they are utterly dissimilar in shape, design, lettering, size, wording, and coloring. A most casual glance should reveal to any purchaser by what company the water is sold.' Injunction was denied. Again in *Italian Swiss Colony* v. *Italian Vineyard Co.*, 158 Cal. 252 [110 P. 913, 32 L.R.A. (N.S.) 439], at page 257, the court said: ' "There is no principle more firmly settled in the law of trademarks than that words or phrases which have been in common use, and which indicate the character, kind, quality and composition of the thing, may not be appropriated by any one to his exclusive use." (*Caswell* v. *Davis*, 58 N.Y. 223 [17 Am.Rep. 233]; *Amoskeag Mfg. Co.* v. *Speer*, 2 Sandf. (N.Y.) 599; . . .) This rule, fundamental in the law of trademarks, finds statutory recognition in section 991 of the Civil Code, which prohibits the appropriation as a trademark of "any designation, or part of a designation, which relates only to the name, quality, or the description of the thing or business, or the place where the thing is produced, or the business is carried on." ' And in *Schmidt* v. *Brieg*, 100 Cal. 672 [35 P. 623, 22 L.R.A. 790], at page 681, the court quoted with approval as follows: 'What degree of resemblance is necessary to constitute an infringement is incapable of exact definition as applicable to all cases. All that courts of justice can do in that regard is to say that no trader can adopt a trademark so resembling that of another trader, as that *ordinary* purchasers buying with *ordinary* caution are likely to be misled.' (Italics ours.) So in the instant case

any one who can read common print and has ordinary sight cannot possibly be imposed upon by taking the labels of the defendants for the labels of the plaintiff.

"The fifth count is based on a distinctly different theory from the theory underlying the other four counts. The plaintiff alleges that each party puts up a seven ounce package of potato chips. The defendants print in large figures, one inch high, in a flaming red color, '25c,' on each package. But they instruct the dealers to sell for 15 cents. There is no allegation what the sales price of plaintiff's package is. There are numerous allegations to the effect that defendants' acts are for the purpose of defrauding the public and the plaintiff in particular. The latter cites no authority and we know of none showing the alleged acts of defendants to be actionable. Assuming, although it is not alleged, that the defendants cause the dealers to mark the packages by scratching the '25c' and writing thereon '15c,' such conduct is, we think, a trade practice of which no one may complain.

"Returning to counts one, two, three and four, if we correctly understand the plaintiff's contentions, they are not at variance with any rule of law we have cited. However, the plaintiff relies on the sequence of events and charges the defendants with imitation apparently under the impression that imitation is *per se* actionable. That impression is not sustained by the authorities as clearly appears from what is said in *Southern Cal. F. Co.* v. *White Star C. Co., supra.*

Again, on page 13 of the plaintiff's brief it speaks of the ruling of the trial court and says: 'The court's action could be correct only if it appears as a matter of law, by viewing the exhibits that confusion cannot arise, no matter what defendants' motives may be.' If by that statement the plaintiff means that if the defendants exercise rights common to the general public but that in doing so they acted with a bad motive then the trial court should have overruled the demurrers, such contention is not sustained by the authorities. It is settled law in this state that 'An act lawful in itself is not converted by a malicious or bad motive into an unlawful act so as to make the doer of the act liable to a civil action.' (*Parkinson Co.* v. *Building Trades Council,* 154 Cal. 581, 595 [98 P. 1027, 16 Ann.Cas. 1165, 21 L.R.A. (N.S.) 550].)''

The theory of plaintiff is that defendants accomplished their alleged fraudulent purpose by imitating a distinct combination of features of size, shape, color arrange-

ment, and textual similarities adopted by the plaintiff, and that by such means the public was misled. If, in fact, the plaintiff had pleaded such facts we have no doubt that it would have pleaded good causes of action. The difficulty with the first four causes of action is that plaintiff has pleaded either as exhibits or by description the alleged imitative containers and labels. An examination of such containers and labels demonstrates, as a matter of law, that no reasonable person could conceivably be misled into believing defendants' containers and labels were those of plaintiff. While it ordinarily is a question of fact as to whether two containers or labels are so similar as to constitute unfair competition, and it is also ordinarily a question of fact as to whether the public has been or is likely to be misled, in this case the dissimilarities are so palpable, distinct and clear that it must be held, as a matter of law, that they are not similar, and that the public legally could not be misled.

The judgment is affirmed.