[Civ. No. 15476. First Dist., Div. One. July 13, 1953.]

SUNLITE BAKERY (a Corporation), Appellant, v. HOME-KRAFT BAKING COMPANY, LTD. (a Corporation), Respondent.

Rea, Jacka & Frasse and Irvin A. Frasse for Appellant.

A. W. Carden and M. F. Hallmark for Respondent.

WOOD (Fred B.), J.—This is an action by Sunlite Bakery, a corporation, to enjoin Homekraft Baking Company, Ltd., a corporation, from using wrappers on its bread similar to those used by Sunlite on its bread, in the territory served by the latter for some 14 years, alleging that Homekraft wrappers are so similar to Sunlite's as to mislead the public, that Homekraft recently commenced the use of these similar wrappers with intent to deceive the public into buying Homekraft bread under the impression and belief it is Sunlite bread, and that the public is buying Homekraft bread so wrapped under the mistaken belief it is Sunlite bread, to the great and irreparable damage of Sunlite.

The trial court found against Sunlite on these issues and gave judgment for Homekraft. Sunlite has appealed.

Sunlite does not rely upon any trademark or copyright law. It bases its claim upon the law of unfair competition.* Our examination of the record convinces us that Homekraft's wrapper is not so similar to Sunlite's as to constitute unfair competition.

The distinguishing feature of Sunlite's wrapper is its red end,—solid red across one end and on all sides for about three inches from that end. Between this and the other end, on the top and on each side, the word "Sunlite" in black letters 1¼" high is displayed on a white background. The Homekraft wrapper has a white end bearing a rooster design, a red rooster in a red circle one inch in diameter. Attached

---

*As to the distinction between trademark protection and unfair competition, see 40 Cal.L.Rev. 571.

is a 2¾"x2¾" blue and white sticker displaying the words "Fresh," "Homekraft" and "Bread." Near this end, extending across the top, bottom and both sides, there is a red band 3⅝" wide, upon which the red rooster design appears in white circles 2¾" in diameter; within each circle the words "morning" and "fresh" also are displayed in blue. In grocery stores and markets Sunlite loaves are customarily displayed in racks with the red ends pointing toward the aisles. When Homekraft started distributing in this area, its bread was similarly displayed in racks. The ultimate decision as to stacking bread in a store is that of the manager of the store, but he rarely disturbs the display as set up by the distributor's driver-salesman.

Plaintiff produced four witnesses who had made one purchase, each, of Homekraft bread under the mistaken impression it was Sunlite. Each picked up a loaf of Homekraft along with other groceries. Three discovered the error by the time he or she reached the cashier's counter; one, as soon as he reached his auto outside.. Three were in a hurry at the time. The fourth thought the loaf he had mistaken for Sunlite had a brown end instead of Homekraft's white end. At the trial none of the four had any difficulty in distinguishing between the Sunlite and Homekraft wrapped loaves, each viewing them from a distance of about 9 feet.

 We agree with the trial court that Homekraft's wrapper was not sufficiently similar to Sunlite's to meet the test of a "similarity which would be likely to deceive or mislead an ordinary unsuspecting customer." (*Academy of Motion Picture Arts & Sciences* v. *Benson*, 15 Cal.2d 685, 692 [104 P.2d 650]; quoted in *American Distilling Co.* v. *Bellows & Co.*, 102 Cal.App.2d 8, 21 [226 P.2d 751].) Indeed, with examples of the two wrappers attached to and made a part of the complaint, as they were, we might almost say as a matter of law that the buying public could not be misled. (See *Scudder Food Products* v. *Ginsberg*, 21 Cal.2d 596 [134 P.2d 255].)

We adopt as our own, the opinion rendered by Judge Del Mutolo who presided at the trial: "There are two rules of law which stand out above all others to guide me in the decision of this case. The first is found in the case of *American Automobile Assn.* v. *American Automobile O. Assn.*, 216 Cal. 125 [13 P.2d 707], which reads as follows: 'Would a person exercising that care, caution and power of perception which the public may be expected to exercise

in the matter which it has in mind, mistake one of said emblems for the other?'

■ "The other rule is found in the case of *American Distilling Co.* v. *Bellows & Co.*, 102 Cal.App.2d 8 [226 P.2d 751], and it reads as follows: 'The law, however, protects not only the intelligent, the experienced, and the astute. It safeguards from deception also the ignorant, the inexperienced and the gullible . . . the law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearance and general impressions.'

■ "Disregarding the first rule of law, as set forth in the Automobile Assn. case, and giving plaintiff all benefit of any doubt both in law and fact, there is nothing, in my opinion, about defendant's wrapper, with the exception of the color and size of the loaf, which in any way resembles plaintiff's wrapper. If a person picked up defendant's bread intending to purchase plaintiff's, he could just as well have picked up defendant's Exhibits C, D, or E.* All of the aforementioned exhibits have some red on the end of the wrapper. The wrapper most similar to plaintiff's, in my opinion, is defendant's Exhibit E. However, Exhibit E is not in dispute here.

"A person would have to be very careless, indeed, to pick up defendant's bread when he intended to buy plaintiff's. A few isolated instances of confusion would not be sufficient to rule out defendant's product from plaintiff's territory considering that plaintiff does a large volume of business. I venture to say that there have been isolated instances of confusion between Langendorf's bread and Kilpatrick's. One wrapper contains long white and blue stripes and the other is a sort of basket weave with two different shades of blue as the predominant color on both wrappers.

"I do not believe that the principle of law contained in the American Distilling Co. case goes so far as to include the ultra careless and the indifferent purchaser. If it did, then the first comer in the manufacture of a product would have an exclusive monopoly and keep everyone else out of the field by showing that one or a few customers were deceived in buying one product when they intended to buy another.

---

*Exhibits C, D, and E were bread wrappers used by other bakeries than Sunlite or Homecraft, in this area.

"The differences in the wrappers of plaintiff's and defendant's are so many and so prominent as to negative any probability that an ordinary intelligent buyer, exercising ordinary care, will ever be so far deceived by any resemblance of defendant's to plaintiff's wrapper as to buy one of these brands of bread when intending to buy the other."

Plaintiff advances the further argument that even if the evidence of "similarity" is weak, plaintiff should prevail because of the proof of defendant's asserted intent to deceive the public into buying Homekraft in lieu of Sunlite bread. The evidence concerning such an intent is not all one way. We can look only at that which supports the finding. Even if an intent so to deceive were unequivocally demonstrated by unconflicting evidence, that would not be a sufficient reason for reversal of the judgment. ■ A bad motive would not convert a lawful act into an unlawful one so as to make the doer of it civilly liable. (*Scudder Food Products* v. *Ginsberg, supra,* 21 Cal.2d 596, 601.)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.