[Civ. No. 25003. Second Dist., Div. Three. Nov. 1, 1961.]

SHOW MANAGEMENT (a Corporation), Appellant, v. HEARST PUBLISHING COMPANY, INC. (a Corporation) et al., Respondents.

Robert E. Benton and Austin Clapp for Appellant.

Flint & MacKay and Edward L. Compton for Respondents.

FORD, J.—This is an appeal from a judgment entered after the plaintiff failed to amend pursuant to the leave granted to it by the court when a general demurrer to its amended and supplemental complaint was sustained. (Code Civ. Proc., § 581.)

The gist of the plaintiff's pleading will be stated. It is alleged that the plaintiff and the defendants are in the business of organizing and producing trade expositions. H. Werner Buch, at first as the partner of another person and later as an employee of the plaintiff corporation, organized and produced an exposition under the name of the Los Angeles Sportsmen's Vacation, Boat and Trailer Show annually from 1946 to 1959, inclusive; exhibitors included manufacturers and distributors of sporting goods, boats, motors and accessories as well as operators of private resorts and "States, Counties and other governmental units"; in 1959 there were more than 250 such exhibitors who contracted with the plaintiff for exhibit space. In California and elsewhere in the United States a substantial number of persons, firms and corporations are engaged in the business of producing such trade expositions; there is competition among them in the matters of obtaining contracts with exhibitors and securing public patronage.

It is further alleged that prior to the termination of the plaintiff's exposition in 1959, the time for the plaintiff's exposition in 1960 had been determined to be the period of March 31 to April 10, inclusive; "some exhibitors had already entered into contracts for exhibit space in the Plaintiff's 1960 exposition, and others had signified their intention to enter into such contracts."

The pleader states that defendant Tabery "formulates, directs and controls the acts and practices" of defendant corporations The Tabey Corporation and Showmanship, Inc. The defendant Payne is an employee of the defendant Hearst Publishing Company, Inc., which is the publisher of the Los Angeles Examiner. "Prior to June 15, 1959, Defendants desired to organize and produce a trade exposition in the City of Los Angeles during the period March 11-20, 1960, to be conducted in substantially the same manner as Plaintiff's past and projected expositions as hereinabove described and to include therein, as exhibitors, persons, firms, corporations and governmental bodies in the same trade categories and advocating the same vacation possibilities as have been and will be included in Plaintiff's 1960 exposition"; the defendants

Tabery and Hearst Publishing Company, Inc., "agreed with each other jointly to organize and produce such exposition and to share the profits or losses thereof, and . . . that the enterprise would be carried out by and through the Defendant Showmanship, Inc., . . . [and] that said exposition would be conducted under the fictitious name of 'International Sports and Vacation Show' . . . from March 11-20, 1960, both dates inclusive, in the City of Los Angeles."

Further allegations are that the defendants represented to the Governor of the State of California that such show was sponsored by the Los Angeles Examiner and was in the nature of a civic event or enterprise, and that they requested the Governor to issue a proclamation declaring the period of the show to be International Sports and Vacation Week and inviting participation in, and attendance at, such show. The Governor was not informed of certain facts known to the defendants; one of such facts was that the show "was a purely private venture, the profits of which, if any, were to be divided between Defendants." The representation that the show was in the nature of a civic event or enterprise was false and so known to be by the defendants. The Governor believed and relied on such representations and on or about June 15, 1959, issued a proclamation of the kind requested.

It is also alleged that the defendants represented to other persons, named in the complaint, each of whom held a public office or was an officer of a private organization, that such show was of a civic nature, and requested such persons to permit the use of their respective names and titles in a list of members of an "Honorary Committee."

Thereafter the defendants prepared and distributed a printed brochure containing pictures of the Governor and the members of the committee and a photographic reproduction of the proclamation; therein were also statements soliciting participation by exhibitors and describing available space and services and the cost of licenses to use such space. The defendant Tabery and his employee had photographs taken depicting them, or one of them, with governors of other states "under the false and misleading representations to said governors of other states that they were the 'special emissaries' of the Governor of the State of California"; they caused such pictures to be published in newspapers and other advertising media distributed to the public; they "have continued to publicize themselves as 'special emissaries' of the Governor of this

State'' although they have been advised by a member of the Governor's staff to cease such conduct.

It is further alleged that the defendants ''intended to create the impression in the minds of prospective exhibitors in Plaintiff's and Defendants' respective 1960 shows, and in the minds of members of the general public who would be expected to pay admission to attend Plaintiff's and Defendants' 1960 shows, that Defendants' 1960 show'' was a civic rather than a commercial enterprise and that it was endorsed by public officials and persons of prominence and was also endorsed by ''a newspaper for its unique and beneficial characteristics after an independent and personal evaluation of its merits by the editorial and news staff of the newspaper''; thereby the defendants intended to secure for their show ''an undue preference over Plaintiff's 1960 show''; they ''further intended by the creation of such impression'' to cause exhibitors to contract with them for space in their 1960 show and not to contract with the plaintiff for space in its 1960 show as well as to cause exhibitors who had contracted for space in the plaintiff's 1960 show to cancel their contracts with the plaintiff in whole or in part and to contract ''solely or partially'' for space in the defendants' show; and the defendants also intended by the creation of such impression to cause the general public to patronize the defendants' show in preference to that of the plaintiff. A further allegation is that the defendant Hearst Publishing Company, Inc., ''has engaged and intends to continue to engage in unfair and deceptive acts and practices and unfair methods of competition'' in the concealment from ''its reading public'' of the fact of its financial interest in the proceeds of the show.

The complaint contains allegations as to the use of a list of the plaintiff's exhibitors. It is alleged that ''the names of the persons, firms and organizations who have been exhibitors in Plaintiff's exposition, and particularly the names of the persons in such firm and organizations who were directly charged with negotiations with respect to entering into contracts for the purchase of exhibit space, was and is confidential information belonging to the Plaintiff, and gathered by Plaintiff at great cost and expense, and close and friendly relationships exist between Plaintiff and its employees, and with such persons, firms and organizations.'' Prior to and during the plaintiff's 1959 exposition, the plaintiff imparted to the defendants Hearst Publishing Company, Inc., and Payne such ''confidential information at their request and for their bene-

fit solely for the purpose of permitting said Defendants to solicit advertising for the Los Angeles Examiner from such persons, firms and organizations, and from the time of imparting said information for the said purpose, and at all times since then, Plaintiff reposed trust and confidence in said Defendants that said information would be used for the purpose intended and not otherwise, and the said Defendants accepted the said trust." "[S]ubsequent to the formation of said agreement between Defendants, and in violation of the trust and confidence reposed in them," defendants Hearst Publishing Company, Inc., and Payne disclosed such confidential information to defendants Tabery, The Tabery Corporation, and Showmanship, Inc., and since such disclosure the defendants have used the information "to solicit exhibitors for their show, and to induce such of said exhibitors as had entered into contracts with Plaintiff for exhibit space in its 1960 exposition, to break their contracts with Plaintiff and to exhibit in said Defendants' show instead."

As a result of the acts and conduct of the defendants, it is alleged, some of the plaintiff's exhibitors "have substantially reduced the amount of exhibit space previously contracted for, and others have advised Plaintiff that they intend to contract with Defendants for exhibit space in said Defendants' show rather than with Plaintiff for its exposition."

The plaintiff alleges that, unless enjoined and restrained, the defendants intend to continue their conduct. It is further alleged that there is a conspiracy on the part of the defendants "to combine their capital and skill to create and carry out restrictions in trade and commerce, to wit, in the business of organizing and producing trade expositions, in that they have conspired and agreed and acted in concert . . . and it was and is their intent and purpose to force Plaintiff out of said business and to suppress competition between Plaintiff and Defendants and to prevent Plaintiff from entering into contracts, both with exhibitors and with the general public which it otherwise would enter into."

A further allegation is that by the acts and conduct of the defendants the plaintiff has been and will be damaged in its business.

The matter of whether an injunction should issue appears to have become moot in the passage of time. (See *Stuart Arms Co.* v. *San Francisco*, 203 Cal. 150, 152 [263 P. 218] ; *Lenahan* v. *City of Los Angeles*, 14 Cal.2d 128, 132 [92 P.2d 1014] ; *Hidden Harbor, Inc.* v. *American Federation of Musi-*

612

*cians,* 134 Cal.App.2d 399, 402 [285 P.2d 691].) ▇▇ There still remains, however, the question of whether a cause of action for the recovery of damages has been stated; in the determination of that matter the allegations of the appellant's amended complaint which are well pleaded are to be taken as being true. (*Gill* v. *Curtis Publishing Co.,* 38 Cal.2d 273, 275 [239 P.2d 630].)

▇▇ The principal contention of the appellant is that the conduct of the defendants gave rise to a cause of action for damages because of tortious interference with both existing and prospective contractual relations. ▇▇ As stated in *Herron* v. *State Farm Mutual Ins. Co.,* 56 Cal.2d 202 [14 Cal.Rptr. 294, 363 P.2d 310], at page 205: "An action will lie for the intentional interference by a third person with a contractual relationship either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. (*Lipman* v. *Brisbane Elementary Sch. Dist.,* 55 Cal.2d 224, 232 [11 Cal.Rptr. 97, 359 P.2d 465] ; *Fifield Manor* v. *Finston,* 54 Cal.2d 632, 635 [7 Cal.Rptr. 377, 354 P.2d 1073] ; *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 35 [112 P.2d 631].)"[1] Accordingly, it is necessary to consider the nature of the means which are alleged to have been used by the defendants because of which use "some of Plaintiff's exhibitors have substantially reduced the amount of exhibit space previously contracted for, and others have advised Plaintiff that they intend to contract with Defendants for exhibit space in said Defendants' show rather than with Plaintiff for its exposition."

▇▇ The appellant contends that, under the circumstances alleged in the amended complaint, the defendants' statements representing that the Governor had endorsed the enterprise "seem to be untrue or misleading statements" prohibited by section 17500 of the Business and Professions Code. That section is as follows: "It is unlawful for any person,

---

[1] In *Imperial Ice Co.* v. *Rossier, supra,* 18 Cal.2d 33, it was stated, at page 35, as follows: "It is universally recognized that an action will lie for inducing breach of contract by a resort to means in themselves unlawful such as libel, slander, fraud, physical violence, or threats of such action. (See cases cited in 24 Cal.L.Rev. 208; 84 A.L.R. 67.) Most jurisdictions also hold that an action will lie for inducing a breach of contract by the use of moral, social, or economic pressures, in themselves lawful, unless there is sufficient justification for such inducement. (See cases cited in 84 A.L.R. 55; 24 Cal.L.Rev. 208, 209; see Sayre, *Inducing Breach of Contract,* 36 Harv.L.Rev. 663, 671; Carpenter, *Interference With Contractual Relations,* 41 Harv.L.Rev. 728, 732; Rest., Torts, § 766.)"

firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this State, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement, concerning such real or personal property or services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any such person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell such personal property or services, professional or otherwise, so advertised at the price stated therein, or as so advertised.'' The appellant further asserts that the defendants' statements in the Los Angeles Examiner "creating the unmistakable impression that defendants' show is being recommended by the editorial and news staff on the basis of their personal evaluation of its merits and popularity with the public, and suppressing the fact that the owner of the newspaper has a direct financial interest in the success of the show and the fact that this is the real basis of their recommendations, in order to dispose of real and personal property and services, seem to be untrue or misleading statements prohibited by the same statute.''

While false advertising may constitute a public offense subjecting the person responsible therefor to prosecution (see Bus. & Prof. Code, § 17534; *People* v. *Wahl,* 39 Cal.App.2d Supp. 771 [100 P.2d 550]),[2] the question here presented is

---

[2]It is also to be noted that it is provided in section 17535 of the Business and Professions Code as follows: ''Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction.

''Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney in this State in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public.''

whether it can be the basis of a civil action by a competitor.[3] The case of *American Washboard Co.* v. *Saginaw Mfg. Co.,* 103 F. 281, which came before a court composed of Circuit Judges Taft, Lurton, and Day, appears to constitute the leading precedent in this field. Therein, in determining that a private cause of action did not exist under the facts of that case, the court said at pages 284-285: ''Applying this doctrine to the allegations of complainant's bill, we do not find it anywhere averred that the defendant, by means of its imitation of complainant's trade-mark, is palming off its goods on the public as and for the goods of complainant. The bill is not predicated upon that theory. It undertakes to make a case, not because the defendant is selling its goods as and for the goods of the complainant, but because it is the manufacturer of a genuine aluminum board, and the defendant is deceiving the public by selling to it a board not made of aluminum, although falsely branded as such, being in fact a board made of zinc material; that is to say, the theory of the case seems to be that complainant, manufacturing a genuine aluminum board, has a right to enjoin others from branding any board 'Aluminum' not so in fact, although there is no attempt on the part of such wrongdoer to impose upon the public the belief that the goods thus manufactured are the goods of complainant. We are not referred to any case going to the length required to support such a bill. It loses sight of the thoroughly established principle that the private right of action in such cases is not based upon fraud or imposition on the public, but is maintained solely for the protection of the property rights of complainant. It is true that in these cases it is an important factor that the public are deceived, but it is only where this deception induces the public to buy the goods as those of complainant that a private right of action arises. . . . It is doubtless morally wrong and improper to impose upon the public by sale of spurious goods, but this does not give rise to a private right of action unless the property rights of the plaintiff are thereby invaded. There are many wrongs which can only be righted through public prose-

[3]The problem involved in the determination of whether an injunction may properly be granted in favor of a private party is of the same nature; the plaintiff must have some right as to which he is entitled to protection. (See Civ. Code, § 3369 and the discussion in each of the following cases: *International etc. Workers* v. *Landowitz,* 20 Cal.2d 418, 421-423 [126 P.2d 609]; *Perrin* v. *Mountain View Mausoleum Assn.,* 206 Cal. 669, 671 [275 P. 787]; *Athens Lodge No. 70* v. *Wilson,* 117 Cal.App.2d 322 [255 P.2d 482].)

cution, and for which the legislature, and not the courts, must provide a remedy.''

While the *American Washboard* case has been criticized (see 1 Callmann, The Law of Unfair Competition and Trade-Marks [2d ed.] § 18.1, pp. 298-300; Handler, *False and Misleading Advertising,* 39 Yale L.J. 22, 36-37), it appears to represent the view currently prevailing. Callmann states: ''Absent special legislation or evidence of disparagement or an intent to drive a competitor out of business, the Washboard decision has, with few modifications, remained the law of the land.'' (1 Callmann, The Law of Unfair Competition and Trade-Marks [2d ed.] § 18.1, p. 300; see 1 Nims, The Law of Unfair Competition and Trade-Marks [4th ed.] § 9, p. 50.) In another place Callmann says: ''In the cases involving false advertising, however, the deception has been regarded as a tort only against the customer, and the competitor has been afforded no redress unless he was in a position to prove special damage. The courts have not as yet recognized that, as against the competitor, such deception is another means of unfair competition and constitutes an independent tort.'' (Callmann, *False Advertising as a Competitive Tort,* 48 Colum.L.Rev. 876.)

In Prosser on Torts [2d ed.], it is stated at pages 753-754: ''Misrepresentation, when it amounts either to disparagement of the goods of another, or to 'passing off' the defendant's goods in their place, has been held to be actionable; but beyond this the courts have shown a surprising reluctance to give a competitor protection against it. Misbranding, and false advertising, in particular, have been held to be a fraud only upon the public, for which the competitor has no redress at common law, notwithstanding the damage which his own business or even an entire industry may suffer as a result of it. It is only where the plaintiff can show, by virtue of some exclusive position, that any diversion of custom by false advertising has damaged him, that his action has been permitted.''

Section 761 of the Restatement of Torts (vol. IV) deals with the subject of liability to a competitor for false advertising. In comment a, it is said (p. 31) : ''The development of liability of the false advertiser to his competitors, in the absence of 'passing off,' was retarded by several factors: the seeming complexity of the problem, the development of other means of dealing with it, the fear that such liability might unduly hamper free business enterprise, and the acceptance of

precedents as exhaustive rather than as illustrative.'' In comment d is found the following statement (pp. 33-34): ''The rule stated in this Section applies only when the competitor's goods do have the qualities or ingredients which the maker of the misrepresentation falsely claims for his own goods.'' As a *caveat*, it is stated (p. 34): ''The Institute takes no position as to the liability of one who diverts trade from a competitor by fraudulently misrepresenting that his goods have qualities or ingredients which are present in neither his goods nor those of his competitor.''

In the present state of the law, it cannot be said that the alleged misrepresentations, by means of which the defendants are asserted to have embellished their promotional advertising, in and of themselves gave rise to a cause of action in favor of the plaintiff. It is true that false advertising may be actionable if it is of such a nature that its effect is to disparage the product or enterprise of another (see Prosser on Torts [2d ed.], p. 764; *cf. Ojala* v. *Bohlin*, 178 Cal.App.2d 292, 299 [2 Cal.Rptr. 919]; *Pendleton* v. *Time, Inc.*, 339 Ill. App. 188 [89 N.E.2d 435, 438]) or to cause the confusion of one organization with another. (See *Athens Lodge No. 70* v. *Wilson, supra*, 117 Cal.App.2d 322, 325.) But the representations alleged in the present case are not of such a nature.

 A further question remains for determination. That question is whether the conduct alleged in the present case, although not tortious in and of itself, is in the nature of a resort to ''means otherwise lawful when there is a lack of sufficient justification,'' so as to constitute a tortious interference with existing or prospective contractual relations. That subject is, of course, a part of the general problem of whether the plaintiff has been deprived of beneficial relations with others. (See Prosser on Torts [2d ed.], p. 769.) In reaching a conclusion as to the specific question posed it is necessary to consider the nature of the conduct with which the defendants are charged in the light of the fact that the common law has always favored free competition. (See Prosser on Torts [2d ed.], p. 749.) It is to be noted that the present case appears to differ from the usual competitive situation in that it is reasonable to assume that a substantial number of members of the public might desire to attend both expositions and some exhibitors might be inclined to participate in both the show of the plaintiff and that of the defendant.

It is alleged that a brochure containing misleading state-

ments was prepared and distributed by the defendants "with the intent directly, or indirectly, to dispose of real and personal property and services in connection with the production and operation of their show, and to induce the public to enter into obligations relating thereto." It is also alleged that the defendants "further intended" by the creation of a false impression "in the minds of exhibitors and of the general public . . . to cause: (1) Exhibitors to contract with Defendants for space in their 1960 show, and not to contract with Plaintiff for space in its 1960 show; (2) Exhibitors who had contracted for space in Plaintiff's 1960 show to cancel their contracts with Plaintiff in whole or in part and to contract solely or partially for space in Defendants' 1960 show." It is pleaded that a confidential list of the exhibitors at the plaintiff's 1959 exposition was used by the defendants "to solicit exhibitors for their show, and to induce such of said exhibitors as had entered into contracts with Plaintiff for exhibit space in its 1960 exposition, to break their contracts with Plaintiff and to exhibit in said Defendants' show instead." Disregarding the portions of the amended complaint which constitute mere conclusions of law (see *Hancock* v. *Burns,* 158 Cal.App.2d 785, 790 [323 P.2d 456]; *Bentley* v. *Mountain,* 51 Cal.App.2d 95, 98 [124 P.2d 91]), there is no allegation of any act on the part of the defendants directed to any exhibitor or prospective exhibitor other than the publication or circulation of what may be generally characterized as advertising material alleged to contain false or misleading statements *about the defendants' own show.*

The problem immediately presented is whether the allegations of the amended complaint show that the alleged conduct was privileged or justified. While justification is an affirmative defense, it may be considered as supporting the trial court's action in sustaining the demurrer if it appears on the face of the complaint. (See *Herron* v. *State Farm Mutual Ins. Co., supra,* 56 Cal.2d 202, 206-207.) It is clear that the conduct of the defendants as alleged in the amended complaint was not of the same nature as that found in cases such as *Remillard-Dandini Co.* v. *Dandini,* 46 Cal.App.2d 678 [116 P.2d 641], and *Elsbach* v. *Mulligan,* 58 Cal.App.2d 354 [136 P.2d 651], in each of which the defendant actively and affirmatively induced the breach of contracts. In the present case the alleged activity of the defendants, as has been noted, was that of publicizing their

618

exposition. While it is charged that by such activity a misleading impression as to the nature of their enterprise was intentionally given, no precedent has been found upon which to base a determination that the alleged conduct was of such a nature as to dissolve the privilege of competing with the plaintiff for the patronage of exhibitors and of the public.

■ Insofar as the promotional advertising of the defendants was effective with respect to an exhibitor who had entered into a contractual relationship with the plaintiff or with respect to a prospective exhibitor, the reasoning of the Supreme Court in *Imperial Ice Co.* v. *Rossier, supra,* 18 Cal. 2d 33, at pages 36-37, is applicable: "It is well established, however, that a person is not justified in inducing a breach of contract simply because he is in competition with one of the parties to the contract and seeks to further his own economic advantage at the expense of the other. (See cases cited in 84 A.L.R. 83; 24 Cal.L.Rev. 208, 211; see Rest., Torts, § 768(2).) Whatever interest society has in encouraging free and open competition by means not in themselves unlawful, contractual stability is generally accepted as of greater importance than competitive freedom. ■ *Competitive freedom, however, is of sufficient importance to justify one competitor in inducing a third party to forsake another competitor if no contractual relationship exists between the latter two.* [Citations.] ■ *A person is likewise free to carry on his business, including . . . advertising, and solicitation in the usual lawful manner although some third party may be induced thereby to breach his contract with a competitor in favor of dealing with the advertiser.* [Citations.]" (Emphasis added.) (See also *Buxbom* v. *Smith,* 23 Cal.2d 535, 546 [145 P.2d 305].)

■ The determination just stated is not essentially affected by the fact that the plaintiff alleges that the defendants "further intended" by the creation of a misleading impression to cause exhibitors who had contracted with the plaintiff to cancel their contracts "in whole or in part." Such allegation was in addition to the allegations, already noted, that the defendants intended to create a particular impression in the minds of prospective exhibitors and members of the public as to the nature of their enterprise and intended thereby "to secure for Defendants' 1960 show an undue preference over Plaintiff's 1960 show." In view of the law as to the scope of the privilege of the defendants to compete with the plaintiff for the patronage of exhibitors and

of the public, as heretofore stated, such allegations of "further" intent or purpose are not sufficient to support the amended complaint as against the general demurrer. As stated in section 6.12 of Harper and James on Torts, at page 516: "A thoroughly bad motive, that is, *a purpose solely to harm the plaintiff,* of course, is sufficient to exclude any apparent privilege which the interests of the parties might otherwise create, just as such a motive will defeat the immunity of any other conditional privilege. If the defendant does not act in a bona fide attempt to protect his own interest or the interest of others involved in the situation, he forfeits the immunity of the privilege. . . . *Conduct is actionable, when it is indulged solely to harm another, since the legitimate interest of the defendant is practically eliminated from consideration.* The defendant's interest, although of such a character as to justify an invasion of another's similar interest, is not to be taken into account when the defendant acts, not for the purpose of protecting that interest, but *solely* to damage the plaintiff." (Emphasis added.) (*Cf. Scudder Food Products, Inc.* v. *Ginsberg,* 21 Cal.2d 596, 601 [134 P.2d 255]; *Imperial Ice Co.* v. *Rossier, supra,* 18 Cal.2d 33, 36; *Sunlite Bakery* v. *Homekraft Baking Co., Ltd.,* 119 Cal.App.2d 148, 152 [259 P.2d 711]; Carpenter, *Interference with Contract Relations,* 41 Harv.L.Rev. 728, 758-759; Rest., Torts, § 766, com. m, and § 768, com. h.) From the contents of the amended complaint it does not appear that the purpose of the defendants' conduct was *solely* to cause harm to the plaintiff by bringing about a cancellation of the plaintiff's contracts with exhibitors. Rather, the pleading shows on its face that the conduct of the defendants was directed to the achievement of a purpose which was within the scope of their privilege of competition.

The plaintiff alleges that "the names of the persons, firms and organizations who have been exhibitors in Plaintiff's exposition, and particularly the names of the persons in such firms and organizations who were directly charged with negotiations with respect to entering into contracts for the purchase of exhibit space, was and is confidential information belonging to Plaintiff, . . ." Further allegations are that "prior to and during Plaintiff's 1959 exposition," the plaintiff imparted such information to the defendants Hearst Publishing Company, Inc., and Payne at their request "solely for the purpose of permitting said Defendants to solicit advertising for the Los Angeles Examiner . . ."; thereafter the de-

fendants, "in violation of the trust and confidence reposed in them," used the information in the solicitation of exhibitors for their show and to induce "such of said exhibitors as had entered into contracts . . . to break their contracts with Plaintiff. . . ."

In support of its position that the use of such information was wrongful, the plaintiff relies on *Kernel Kutter, Inc.* v. *Fawcett Publications, Inc.,* 284 F.2d 675. The plaintiff in that case had placed in the defendant's publications advertisements of a "strange Bass fishing method" sold by the plaintiff. As a result of the use of advertisements, the plaintiff sold over 25,000 copies of the publication of its method. It was alleged that the defendant agreed to keep the details of the plaintiff's method in confidence, but that when the plaintiff ceased to advertise in its publications, the defendant published an article which revealed the method to the public generally. The court held (284 F.2d, at p. 678) that under the facts as alleged the defendant had no right to "reveal to the public generally information disclosed to it in confidence and which defendant knew was being sold by plaintiff through the advertising which had appeared in various of its own publications." (*Cf. Ojala* v. *Bohlin, supra,* 178 Cal.App.2d 292, 299-300.) The *Kernel Kutter* case, however, is of no aid to the plaintiff because no confidential information was involved in the present case. Not only was the identity of each exhibitor in the plaintiff's 1959 exposition necessarily disclosed in the course of that exposition, but the names of persons whose activities fell within the various categories of enterprise to which the exhibition catered could be easily ascertained by recourse to readily available sources of information. The allegation that such a list of exhibitors constitutes confidential information is a mere conclusion not supported by the facts pleaded. (See *American Alloy Steel Corp.* v. *Ross,* 149 Cal. App.2d 215, 219-220 [308 P.2d 494]; *Mathews Paint Co.* v. *Seaside Paint Co.,* 148 Cal.App.2d 168, 172 [306 P.2d 113].) Although not directed to a problem of pleading, the following reasoning of the court in *Fortna* v. *Martin,* 158 Cal.App.2d 634 [323 P.2d 146], at page 639, is apropos: "We do not think that the evidence produced in this case disclosed the use of any information by Martin which can be considered to be a trade secret or confidential. The identity of Fortna's customers cannot be considered confidential. It is common knowledge that financial institutions require a termite clearance before they will make loans on improved property. It is also

common knowledge that the average purchaser of real property must secure a loan in order to complete the purchase. Realtors usually inform prospective sellers of the necessity of a termite clearance. It follows that both realtors and financial institutions are often in a position to give termite inspection firms leads to business or to give them business. Certainly any person engaged in the business would consider both banks and real estate companies as potential sources of business and contact them. The names and addresses of such firms are found in the yellow pages of any telephone directory. Their identity cannot be confidential.

"Nor do we think that even if there was one man in each firm who controlled the business, such information would be confidential. Any solicitor could ascertain who that person would be. While Fortna describes these men as key contacts of a secret nature, we cannot understand nor does the evidence disclose what the secret nature was."

The final contention of the appellant is stated to be that competition by coconspirators whose purpose is to drive a competitor out of business and thereby lessen competition is a violation of the Cartwright Act and gives rise to a cause of action for damages. In its brief the plaintiff makes no argument with respect to the application of its contention to the specific facts alleged in the amended complaint but is content to rest its position on its citation of the case of *Babcock* v. *Crafts 20 Big Shows, Inc.*, 173 Cal.App.2d 58 [342 P.2d 974]. Therein the court said, at pages 59-60: "Section 16720 and following of the Business and Professions Code (the Cartwright Act) contains California's legislation banning combinations of capital, skill or acts in restraint of trade or commerce. Section 16720 provides that:

"'A trust is a combination of capital, skill or acts by two or more persons for any of the following purposes:

"'(a) To create or carry out restrictions in trade or commerce.

"' . . . . . . . . . . . . . . .

"'(c) To prevent competition in . . . sale or purchase of . . . any commodity.'

"The allegations are sufficient to state a violation of the statutes. They show a combination formed with the intent to arbitrarily use its combined power to force weaker competitors out of business. If the combination is successful it will stifle, or at least lessen materially, competition in the business. Clearly had the four parties combined they would

be in a position of dominance in the field. The same effect will be reached if the purposes of the combination of three former competitors succeed in eliminating the fourth.''

The plaintiff has failed to point out wherein the allegations of the present case fall within the scope of the reasoning of the *Babcock* case or disclose any combination in restraint of trade or commerce. (See *Rolley, Inc.* v. *Merle Norman Cosmetics, Inc.*, 129 Cal.App.2d 844 [278 P.2d 63, 282 P.2d 991].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.